JUMPER *v.* McCOLLUM.

Opinion delivered June 24, 1929.

*J. Wendell Henry,* for appellant.

*R. W. Robins, J. C. & Wm. J. Clark,* for appellee.

SMITH, J. An act, No. 64, was passed at the 1929 session of the General Assembly which effected substantial changes in the law governing the organization and administration of local improvement districts in cities and towns.

A street improvement district was organized in the city of Conway, under the terms of this act, within less than ninety days after adjournment of the General Assembly which passed it, and the validity of the district depends upon the question whether act 64 was in force at the time the district was organized, as the proceedings for that purpose did not conform to the statute which act 64 amends. No other question is involved on this appeal.

The act contains the following emergency clause:

"Section 23. It is ascertained and hereby declared that, by reason of the inability, under present laws, to extend water mains and repair water plants, there is great danger of conflagration, that, by reason of the inability to extend electric light plants, there is great danger to

the public peace and safety, owing to the darkness of the streets, and that, by reason of the inability to extend and repair sewers, there is great danger to the public health, and that, for these reasons, it is immediately necessary that this act should go into operation, and it is therefore declared that an emergency exists, and this act shall be in force and effect from and after its passage."

Appellant, as a property owner in the district, insists (a) that the language used in the emergency clause of act 64 is not sufficient to state an emergency within the meaning of the Constitution, and (b) that there is, in fact, no such emergency as that stated.

The original Initiative and Referendum Amendment provided that: "The second power (reserved to the people) is a referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety) either by the petition, signed by five per cent. of the legal voters, or by the legislative assembly as other bills are enacted."

In construing this constitutional amendment in the case of *Hanson* v. *Hodges,* 109 Ark. 479, 160 S. W. 392, it was held that all acts of the General Assembly are subject to the referendum except such laws as are necessary for the immediate preservation of the public peace, health and safety, but that it was a question exclusively for legislative determination whether a statute was necessary for the immediate preservation of the public peace, health or safety. It was also held in the case cited that, while the existence of an emergency must be declared by the Legislature so as to exclude the referendum, it was not essential that this declaration be made in the exact words of the amendment, as other words of similar import unmistakably showing the intention to declare that an emergency existed, were sufficient.

At the 1918 general election a new Initiative and Referendum Amendment was adopted. *Brickhouse* v. *Hill,* 167 Ark. 513, 268 S. W. 865. Section 4 of this amendment contains the following provisions in regard to emergency legislation:

"If it shall be necessary for the preservation of the public peace, health or safety, that a measure shall become effective without delay, such necessity shall be stated in one section, and if, upon a yea and nay vote, two-thirds of all the members elected to each house, or two-thirds of all the members elected to the city or town councils, shall vote upon separate roll-call in favor of the measure going into immediate operation, such emergency measure shall become effective without delay. It shall be necessary, however, to state the fact which constitutes such emergency. Provided, however, that an emergency shall not be declared on any franchise or special privilege or act creating any vested right or interest or alienating any property of the State. If a referendum is filed against any emergency measure, such measure shall be a law until it is voted upon by the people, and if it is then rejected by a majority of the electors voting thereon, it shall be thereby repealed. The provision of this subsection shall apply to city or town councils."

It is not sufficient, under this last amendment, for the legislation merely to declare that an emergency exists, but it is necessary to state the fact which constitutes such emergency. If therefore an act is passed which does not contain an emergency clause in which the fact is stated constituting the emergency, the act does not become effective until ninety days after the adjournment of the session of the General Assembly at which it was enacted. *Gaster* v. *Dermott-Collins Road Imp. Dist.*, 156 Ark. 507, 248 S. W. 2. But does this last amendment change the rule announced in the Hanson case, *supra,* that the existence and sufficiency of the emergency to withdraw an act from the referendum clause of the Constitution is a legislative, and not a judicial, question? We think not.

It was, no doubt, the intention of the last amendment to terminate the practice, into which the General Assembly had fallen, of placing the emergency clause indiscriminately on much of the legislation, and, as a means to this end, two requirements were imposed to withdraw

legislation from the operation of the referendum power of the people. One was that it was made necessary for the bill to state the fact which constituted the emergency. The other was to require a separate and two-thirds vote of all the members elected to each house of the General Assembly in favor of the measure becoming effective without delay. In this manner the members of the General Assembly were permitted and required to vote, first, whether the bill should become a law, and then to determine whether it should become effective without delay. Both these questions are, we think, legislative and not judicial.

It will not be denied that it is a legislative question solely to determine whether a bill shall become a law. If the Legislature has any function at all, it has this one; and, this being true, it must also be true that it is the province and function of the Legislature to determine when the legislation shall become effective.

If there is an emergency, the General Assembly must state the fact which constitutes it, and must evidence the fact that they have found there was an emergency by a vote taken separate and apart from that taken on the passage of the bill itself. In this manner there is insured, theoretically, at least, the finding by two-thirds of the General Assembly that the fact recited exists and is true, and that it constitutes a sufficient reason for making the act effective without delay.

Of course, an emergency clause which did not state the fact constituting the emergency would not suffice; nor would a recited fact which was so obviously and demonstrably inefficacious to constitute an emergency that all fair-minded and reasonably intelligent men would say to the contrary. But the converse of this proposition is equally true. If the fact which constitutes the emergency is recited, and if fair-minded and intelligent men might reasonably differ as to the sufficiency and truth of the fact assigned for placing the act in effect immediately upon its passage, the courts are concluded by the finding. See the many cases under the subhead, "Encroachment on

Legislature,'' § 15 of the chapter on Constitutional Law, volumes 1 and 5, Crawford's Digest of the Decisions of the Supreme Court, and the same section and subhead of Crawford's Supplement.

We conclude therefore that the emergency clause to act 64 sufficed to put the act into immediate effect, and, as the decree appealed from accords with this view, it must be affirmed, and it is so ordered.

HUMPHREYS, J., (dissenting). I think the purpose of the new Initiative and Referendum Amendment adopted at the general election in 1918 not only terminated the practice, into which the General Assembly had fallen, of placing the emergency clauses indiscriminately on much of the legislation, but also had the effect of changing the rule announced in the case of *Hanson* v. *Hodges,* 109 Ark. 479, 160 S. W. 392, so as to make the sufficiency of the facts stated in an emergency clause a judicial and not a legislative question. Dissenting opinion of Chief Justice HART in *Cumnock* v. *Little Rock,* 168 Ark. 777, 271 S. W. 476; *Payne* v. *Graham,* 118 Me. 251, 107 Atl. 709, 7 A. L. R. 516. The language in the amendment is very plain and emphatic, and it was never intended by the people, in voting for the amendment, that facts might be stated in an emergency clause which are insufficient to support the declared emergency. The language in the amendment is as follows: ''It shall be necessary, however, to state the fact which constitutes such emergency.'' To place any other construction upon this language than I have placed upon it will not remedy the evil which the people intended to correct. The people intended to say by the amendment that, unless an emergency for the immediate operation of a law really existed, they did not intend to be deprived of referring the law to themselves for approval or disapproval before same is put in force or effect. I think the facts set forth in this emergency clause to support the emergency are insufficient.

For the reasons stated I take this opportunity of registering my dissent from the majority opinion in this case.