GENTRY *v.* HARRISON.

4-4786

Opinion delivered November 1, 1937.

*W. G. Riddick, J. H. Carmichael* and *Harry J. Lemley,* for appellant.

*Jack Holt,* Attorney General, *John P. Streepey,* Assistant, *Henry Donham, A. F. House* and *Trieber & Pope,* for appellee.

MEHAFFY, J.   Appellant filed suit in the Pulaski circuit court alleging that on March 6, 1933, he was appointed Insurance Commissioner and Fire Marshal of the state of Arkansas for a term of six years, his appointment being confirmed by the Senate; that he duly qualified and since the date above mentioned has been the duly appointed and acting Insurance Commissioner and Fire Marshal of the state of Arkansas.

That by act No. 2, approved January 15, 1937, the General Assembly attempted to abolish the office of Insurance Commissioner and Fire Marshal, and create the office of Insurance Commissioner; that pursuant to said act the Governor appointed M. J. Harrison, the defendant, Insurance Commissioner on January 15, 1937; the appointment was confirmed by the Senate, and the said Harrison, without the consent of plaintiff, took possession of the office of Insurance Commissioner and State Fire Marshal on January 19, 1937, and has exercised the authority and functions of the office since that time.

It is alleged that act No. 2 did not abolish the office of Insurance Commissioner and State Fire Marshal; that no substantial changes in the governmental agency were made by the act, only the name of the office being affected; that the act is invalid because it is merely an ouster of plaintiff from the office to make way for the appointment of a successor, denying the plaintiff the salary to which he is entitled, in violation of § 8 of art. 2 of the Constitution, and because the attempted removal was without cause and without hearing, in violation of art. 15 of the Constitution.

Plaintiff further alleged that if act 2 is valid, it did not become effective until 90 days after the adjournment of the legislature, because no fact is stated constituting the emergency, and that no emergency existed. It is alleged that the defendant was receiving, under the law, $350 a month. That being a usurper and without right in office, the defendant is liable to plaintiff for salary received by him up until date of judgment.

The prayer was for judgment for the salary. An amendment to the complaint alleged that act No. 2 was a special act.

A demurrer was filed to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer, appellant declined to plead further, and the complaint and amendment were dismissed. The case is here on appeal.

It is conceded that appellant has no property right in the office as against the state, nor to the salary provided for the Insurance Commissioner. It is conceded that the legislature has power to abolish any office which it has created. Appellant concedes that he is without remedy if the state abolishes the office or discontinues the department; but it is contended that the office is intangible and consists in the duties of the office, and that while those duties are continued, the office is continued, and that under a proper interpretation of the act in question, it did not abolish either the office of Insurance Commissioner, or the State Department of Insurance, but that it only had the effect of abolishing the officer, which it is contended the legislature had no power to do.

In 1917, the legislature passed an act to raise the tax of insurance companies and to create the office of Insurance Commissioner and State Fire Marshal. Acts of 1917, p. 1038.

In 1925, an act was passed by the legislature to abolish the office of Insurance Commissioner and State Fire Marshal and create the office of Commissioner of Insurance and Revenues. The act prescribed the duties and powers of said office. Acts of 1925, p. 260.

In 1927, an act was passed by the legislature to create the Department of Insurance Commissioner and State

Fire Marshal and define the duties thereof. Acts of 1927, p. 340.

Section No. 1 of act 115 of the Acts of 1927 created and established the office of Insurance Commissioner and State Fire Marshal.

Section 1 of act 2 of the Acts of 1937 repealed § 1 of act 115 above mentioned, and abolished the office of Insurance Commissioner and State Fire Marshal. Section 2 of act 2 of 1937 created the office as the State Insurance Department. Act 2 repealed § 4 of act 115 of 1927. The other provisions of act 115 of 1927 were not repealed or amended.

The General Assembly has the right to repeal any law enacted by it, and to abolish any office created by it, but the person elected or appointed to office does not hold the office under contract, but under the law, and there is no contract between the state and the officer appointed which is within the protection of the constitution forbidding the impairment of the obligation of a contract.

"Those who take such temporary offices as may be created by the legislature do so with notice of the insecure tenure and the acceptance of the office creates no contract with the state." *Greer* v. *Merchants & Mechanics Bank*, 114 Ark. 212, 169 S. W. 802.

Section 1 of act 2 of 1937 repealed the act under which appellant was appointed, and abolished the office of Insurance Commissioner and State Fire Marshal as then constituted. That the legislature had the power to do this, there, of course, can be no question. The only serious contention is that act 2 was passed to abolish the officer and not the office; but it does, in express terms, abolish the office held by appellant and repeals the act under which he was holding office.

Section 2 of act 2 of 1937 creates an office to be known as State Insurance Department, and § 3 authorizes the Governor, by and with the advice and consent of the Senate, to appoint the Insurance Commissioner.

We think the legislature had the power to do this, and all doubts as to the constitutionality of any statute must be resolved in favor of the validity of the statute.

There is some conflict in the authorities as to the right of the legislature to abolish the office, and we do not review or discuss these authorities. We think the rule is well established in this state that the legislature may repeal any law it enacts and may abolish any office created by it, and the motive or reason for the legislative action cannot be inquired into by the court.

Our conclusion is that the legislature had a right to enact the law and under it the Governor had a right to appoint the Insurance Commissioner.

But it is contended that if the law is valid and had the effect of ousting the appellant, still the act did not go into effect until 90 days after the adjournment of the General Assembly.

The emergency clause in that act reads as follows: "It is hereby found and declared that the regulation of the business of insurance is a function of the state government and necessary for the preservation of the public peace, health and safety, and that therefore an emergency exists, and this act shall take effect immediately upon its passage and approval."

The constitution provides that it shall be necessary to state the fact which constitutes such emergency. Certainly no one can claim that any fact is stated in § 6 of act 2 which constitutes an emergency. It simply states that the regulation of the business of insurance is a function of the state government. This certainly could not be an emergency, and yet this is the only fact stated in the section to constitute the emergency.

Appellee calls attention to the case of *Jumper* v. *McCollum*, 179 Ark. 837, 18 S. W. (2d) 359. In that case, referred to and relied on, the court said:

"It is not sufficient, under this last amendment, for the legislation merely to declare that an emergency exists, but it is necessary to state the fact which constitutes such emergency. If therefore an act is passed which does not contain an emergency clause in which the fact is stated constituting the emergency, the act does not become effective until ninety days after the adjournment of the session of the General Assembly at which it was enacted."

The court, also, said in the above case: "Of course, an emergency clause which did not state the fact constituting the emergency would not suffice; nor would a recited fact which was so obviously and demonstrably inefficacious to constitute an emergency that all fair-minded and reasonably intelligent men would say to the contrary."

The case of *Hanson* v. *Hodges,* 109 Ark. 479, 160 S. W. 392, was decided prior to the adoption of the present Initiative and Referendum Amendment to the constitution. Prior to the adoption of this amendment, it is common knowledge that the emergency clause was attached to almost all laws enacted, and this court has said to prevent this practice, the people inserted in the constitution the sentence: "It shall be necessary, however, to state the fact which constitutes such emergency."

If the legislature stated a fact or facts about which fair-minded men might differ, then the legislative decision would be conclusive, but, as said by this court in *Jumper* v. *McCollum, supra*: "Of course an emergency clause which did not state the fact constituting the emergency would not suffice; nor would a recited fact which was so obviously and demonstrably inefficacious to constitute an emergency that all fair-minded and reasonably intelligent men would say to the contrary."

This emergency clause says that the regulation of the business of insurance is a function of the state government. Of course that does not state any facts constituting emergency.

To hold that the legislature could state a fact as constituting an emergency, which obviously did not constitute an emergency, and which no one would believe constituted an emergency would simply abolish the amendment adopted by the people.

The appellee says that it is evident that the legislature manifested in every possible way its deliberate purpose of making the act immediately effective. We agree with the appellee.

The constitutional provision was adopted by the people of the state. By it, the legislature and the courts are bound, and this provision in the constitution, as well

as all others, should be enforced. If the question is doubtful as to whether the facts constitute an emergency, the legislature's determination would be conclusive, but if they state a fact that has no relation whatever to an emergency, this would not make the law go into effect at once.

There are many decisions collected in Words and Phrases, on what constitutes an emergency; but since there are no facts stated in act No. 2 in the emergency clause that constitute an emergency, we deem it unnecessary to discuss these authorities, because all must agree that to state that the insurance business is a function of the state government does not state facts constituting an emergency. Our conclusion is that the law is valid, but it did not take effect until 90 days after the adjournment of the General Assembly.

The judgment holding the law valid is, therefore, affirmed, but that part of the judgment holding that the law went into effect immediately is reversed, and the cause remanded with directions to ascertain the amount of salary due appellant from the time he was deprived of the office, until 90 days after the adjournment of the General Assembly, and enter judgment for this amount.

MEHAFFY, J., (on rehearing). Appellee files petition asking that the judgment of the court be modified and the cause remanded to the circuit court, and alleges that he is entitled to offset the judgment sought to be recovered with any amount which appellant has earned during the period in question. The appellee says that he is entitled to raise the question of whether appellant is estopped to claim compensation.

In ordinary cases, where a party is employed under a contract and is discharged and sues for damages, the employer is entitled to show what the discharged employee earned during the time, from the discharge to the expiration of the contract. This is true because the suit is for damages, and if the employee has had other employment, or could have had other employment and earned money, his damages, of course, would be reduced by the amount he had earned or could have earned. But

appellant did not hold this office by contract, and he was not entitled to the salary by contract; he was entitled to it by law.

"Ordinarily it is immaterial whether a public officer illegally deprived of his office was able to earn money in some other employment. When a public officer is wrongfully excluded from his office and is restored, and meanwhile has received compensation from other sources for services rendered during the period of his illegal suspension or exclusion from office, he is not required to credit such compensation on his claim for back salary due him. But this view is not accepted universally and sometimes public officers restored to office are awarded their salaries less the amounts which they have meanwhile earned from other sources. For example where a person entitled to preferential employment by the government under a veteran's preference law brings suit for breach of the contract of employment the measure of damages is the pay which the plaintiff would have earned under his contract less what he has actually earned elsewhere, or which in the exercise of proper diligence he might have earned in some other employment." 22 R. C. L. 547.

There is some conflict in the authorities where there is no statute. The New York court held that the rule, in cases where there was a suit for damages for a breach of contract, had no application in the suit of an officer who had been wrongfully deprived of his office, and said:

"But this rule of damages has no application to the case of an officer suing for his salary, and for the obvious reason that there is no broken contract or damages for its breach where there is no contract. We have often held that there is no contract between the officer and the state or municipality by force of which the salary is payable. That belongs to him as an incident of his office, and so long as he holds it; and when improperly withheld he may sue for it and recover it. When he does so he is entitled to its amount, not by force of any contract, but because the law attached it to the office; and there is no question of breach of contract or resultant damages out of which the doctrine invoked has grown." *Fitz-*

*simmons* v. *City of Brooklyn,* 102 N. Y. 536, 7 N. E. 787, 55 Amer. Rep. 835.

The rule applicable to damage cases has no application to the case of an officer suing for his salary for the reason that, in the latter case, liability is not upon contract. The salary is an incident of the office and, if he is wrongfully excluded from the office, he may recover the salary without crediting his earnings thereon. *Reising* v. *City of Portland,* 57 Ore. 295, 111 Pac. 377, Ann. Cas. 1912D, 895.

While there are some courts holding contrary to this rule, still we know of no court where there is a statute like ours, that has held contrary to the New York and Oregon courts.

Our statute reads as follows: "Where the usurper has received fees and emoluments arising from the office or franchise, he shall be liable therefor to the person entitled thereto, who may claim the same in the action brought to deprive him of the office or franchise, or in a separate action. If no one be entitled to the office or franchise, the same may be recovered by the state and paid into the public treasury." Section 14331, Pope's Digest.

Any person elected or appointed to an office is entitled to the salary fixed by law. Whoever deprives one wrongfully of an office is liable to the party that is deprived for the full salary, and if there is no other person entitled to the salary, then the amount received by the person not entitled may be recovered by the state.

The salary is fixed by law and not by contract. Therefore the appellant is entitled to recover from the appellee the amount of salary he would have received from the time he was deprived of his office until 90 days after the adjournment of the General Assembly, when the new law became effective.