CUNNINGHAM *v.* WALKER.

4-5624                                    132 S. W. 2d 24

Opinion delivered October 9, 1939.

*Peter A. Deisch,* for appellant.

*Burke, Moore & Walker,* for appellee.

GRIFFIN SMITH, C. J. Act No. 37, approved February 6, 1939, p. 69, by its terms directs that annually one member of the board of commissioners of certain levee and drainage improvement districts shall be elected on the first Monday in May.

The improvement district involved in this discussion was created under authority of Chapter XCVIII, Sandels & Hill's Digest, as amended by act No. 122 of 1911. The latter act was amendatory of act No. 9 of 1897. Provisions of the law prior to 1939 were that a board of three commissioners should be elected simultaneously on the first Monday of May of each year.

If act No. 37 of 1939 is valid, § 4 thereof repeals the section of the 1911 statute providing for annual election of three commissioners. Act 37 provides that commissioners of the district, as now constituted, shall hold office according to seniority. The oldest commissioner in point of service ". . . shall hold office for three years; the next commissioner in point of service shall hold office for two years, and the last elected or appointed commissioner shall serve for one year, or until their successors are elected and qualified; all of said terms beginning from the first Monday in May, 1939."

The election commissioners disregarded act No. 37 and called the usual district election. Appellant had been a commissioner for more than twenty years. At the time the election was held May 1, 1939, under provisions of the old acts, another commissioner had served two years, and a third had served one year. Cunningham did not qualify as a candidate, his contention being that act 37 was in effect and that it provided for the election each year of one commissioner—a commissioner to succeed the incumbent who had served the shortest period of time. Appellee Walker, who had not previously served on the commission, qualified as a candidate. The election commissioners declared his election. Appellant filed his complaint, praying that he be declared a continuing commissioner, and that appellee be ousted.

930

Appellee demurred, alleging unconstitutionality of act No. 37. One reason assigned was that it contravenes Amendment No. 14 to the state Constitution.[1] It was also alleged that the act does not state an emergency.

Since under any of the statutes time for holding an election in 1939 has passed, we do not determine whether the measure here in issue contravenes Amendment No. 14. Act No. 37 was not in effect on the first Monday in May; therefore, other questions involving validity of the act are unimportant to a determination of appellant's rights.

The rule laid down in *Gentry* v. *Harrison*[2] is decisive here. We reproduce, in parallel columns, the language held ineffective in that case, and the emergency clause in the instant controversy. The reported case appears in the first column:

"It is hereby found and declared that the regulation of the business of insurance is a function of the state government and necessary for the preservation of the public peace, health and safety, and that therefore an emergency exists."

"Because of the urgent need for experienced management of improvement district affairs, this act is necessary for the immediate preservation of the public peace, health and safety, and an emergency is hereby declared to exist."

By constitutional Amendment No. 7, the people reserved unto themselves the power to reject at the polls any measure enacted by the General Assembly. Conditions under which such rejection may be exercised are prescribed. One provision is that the effective date of an act is postponed until 90 days after adjournment of the law-making body unless the enactment shall be essential to preservation of the public peace, health and safety. In such circumstances the necessity for immediate operation of the law shall be stated in one section of the bill, ". . . and if upon a yea and nay vote, two-thirds of all members elected to each house . . . shall vote upon a separate roll call in favor of the measure going into immediate operation, such emergency

---

[1] "The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

[2] 194 Ark. 916, 110 S. W. 2d 497.

measure shall become effective without delay. It shall be necessary, however, to state the fact which constitutes the emergency.''.

In *Jumper* v. *McCollum* [3] it was held that '' . . . an emergency clause which did not state the fact constituting the emergency would not suffice; nor would a recited fact which was so obviously and demonstrably inefficacious to constitute an emergency that all fair-minded and reasonably intelligent men would say to the contrary. But the converse of this proposition is equally true. If the fact which constitutes the emergency is recited, and if fair-minded and intelligent men might reasonably differ as to the sufficiency and truth of the fact assigned for placing the act in effect immediately upon its passage, the courts are concluded by the finding.''

It was said in *Hanson* v. *Hodges* :[4] ''One purpose of Amendment No. 10 was to confer upon the Legislature the power to pass laws that were necessary for the immediate preservation of the public peace, health or safety, without reference to the people under the referendum.''

Amendment No. 10 was superseded by Amendment No. 7. The latter amendment provided (but the former did not) that it should be necessary to state the fact constituting an emergency.

In the Hanson Case, decided in 1913, it was held that the existence or non-existence of an emergency was exclusively a question for legislative determination. Subsequent to this decision the people adopted Amendment No. 7 (1920), and by the terms of this amendment the General Assembly is required to state the fact constituting a recited emergency. The Jumper-McCollum decision was handed down in 1929. Its effect is to say that the General Assembly may not arbitrarily assert that an emergency exists, but in the exercise of sound judgment with respect to the subject of legislation and the effect thereof, it may do so. As was said in the opinion, if fair-minded and intelligent men might reasonably dif-

[3] 179 Ark. 837, 18 S. W. 2d 359.
[4] 109 Ark. 479, 160 S. W. 392.

fer as to the sufficiency and truth of the fact assigned, the courts will not interfere. Under this rule the courts determine whether the assigned fact is one with respect to which fair-minded and reasonable men would differ. The precedent is analogous to that applied in sustaining the verdict of a jury: if there is substantial evidence it will not be disturbed.

The question presented in the case at bar is, Does the act state facts constituting an emergency? Or, conversely, Does the legislative finding that "Because of the urgent need for experienced management of improvement district affairs" state a condition or fact which, if ignored, would imperil the public peace, health and safety?

We must bear in mind that by express language act No. 37 applies to all combination levee and drainage districts in Arkansas wherein the boundaries correspond to the designations of § 1. Act No. 122 of 1911 amends §§ 5, 6, and 29 of act 9 of 1897, the latter being a general act. The 1911 enactment is special, applying only to Phillips county, and in it the time and manner of elections are fixed.

The plan of act No. 37 was, by words relating to boundaries and areas, to avoid the consequences of Amendment No. 14. An existing special act may be repealed in whole or in part, but it may not be enlarged or extended.

We agree with the trial court that no fact creating an emergency was stated. An academic declaration of a known governmental requirement was expressed. An administrative truism was asserted. It might as well have been said that because rivers are deep and currents are treacherous, steamboats must be built substantially, the public peace, health and safety requiring it. All men will agree that, with respect to improvement districts, there is need for experienced management. This admission, however, and acceptation of the conceded principle, falls far short of a finding that the existing management

is without experience, that it is inefficient, or that an immediate change in management is necessary.

We must, therefore, affirm that part of the judgment which holds against the emergency. It is so ordered.