1132                    

5-1349                                303 S. W. 2d 889

Opinion delivered July 1, 1957.

*O. D. Longstreth, Jr., Joseph C. Kemp* and *Joseph Brooks,* for appellant.

*Rose, Meek, House, Barron & Nash,* for appellee.

SAM ROBINSON, Associate Justice. Under authority of Act 99 of the General Assembly of Arkansas for 1921, Ark. Stats. § 19-702, a majority of the electors of the City of Little Rock voted to adopt the City Manager form of municipal government. During the campaign on the issue of whether the City Manager plan would be adopted it was explained to the people that the law then in effect authorizing the City Manager system was defective, and, to be workable in a satisfactory manner, amendments would be necessary. Subsequent to adoption of the new form of city government by the people, the 1957 General Assembly, by Act No. 8, amended Act 99 of 1921; but the amendment was adopted prior to an election to select the Board of Directors for the city under the City Manager plan. This suit was filed asking for a declaratory judgment; thirteen points were put in issue in the circuit court. The cause is here on appeal and cross appeal. The view we take as to the direct appeal makes it unnecessary to go into the cross appeal.

The appellants have listed six points which are relied on for reversal, but, when analyzed, there are really only four points at issue. The first three points go to the question of whether, since the adoption of the 1957 amendment, it is necessary that the question of changing to a City Manager form of government be again submitted to a vote of the people. In Point 4, the validity of the emergency clause is attacked, and, by Point 5, it is contended that Section 22 of Act 8 of 1957 constitutes local legislation, and is, therefore, void. Point 6: Appellants contend that misleading statements were made by sponsors of the City Manager plan which render the election on that question void.

The question in which the first three points are concerned is whether the City Manager form of government

may be put into effect under the 1921 Act, as amended by the 1957 Act, when the amendment had not been adopted by the General Assembly at the time the electors of the city voted in favor of the City Manager plan. The mere fact that the Board of Directors had not been selected at the time of the adoption of the 1957 amendment is of no importance. If the 1921 Act could be amended, after the election, on the question of whether the City Manager plan would be put into effect, the fact that directors had not been selected would make no difference. The real issue is this: The electors adopted a City Manager plan of municipal government under an existing law which set out the details of the operation of such manager plan. Now, can the legislature amend the original law under which the plan was adopted by making a change as to those details, and such amendment become effective without a vote thereon by the people?

The changes, as listed by appellants, are as follows:

"1. Qualification of Directors.

a. Under this original act, any citizen or resident of the community, twenty one (21) years old or older could be a candidate for Director. Under the amended act, no person under the age thirty (30) can be a candidate for Director.

"2. Qualifications of City Manager were completely changed.

a. Under the original act, the City Manager had to be a resident, citizen, and elector in the community of which he was appointed City Manager.

b. Under the original act, he was required to be a Constitutional Officer.

c. Under the new act an attempt was made to turn him into an employee.

"3. Under the original act certain elected officers were continued in office until such time as their term expired. After which, the said officers were subject to appointment by the City Manager.

These offices:

a. City Clerk

b. City Treasurer

c. City Attorney

Under this new act, the terms of these offices are terminated. They are subject to appointment by the Commission.

''4. Method of electing officers under act has been changed.

a. All reference to primary election to be held under Act 99 of 1921, has been eliminated by Act 8.

b. Act 8 provides that the results of said election shall be certified by the County Board of Election Commissioners to the City Clerk.

c. Act 8 also provides that instead of running at large, that said Directors running for office under City Manager form of government run for numbered positions.

''5. The act also creates new offices.

a. The office of Mayor is created.

b. The office of an Assistant Mayor is created.

c. These offices did not exist under the original act.

''6. The office of Mayor is given an unlimited expense account.

''7. The following commissions which were not exempt from control by the City Manager under the original City Manager Act were exempted from control under the provisions of the new act.

Water Works Commission

Sewer Committee

Airport Commission

Housing Authority

Board of Civil Service Commissioner

Auditorium Commission

Library Trustees

City Manager Planning Commission.''

Appellants cite *O'Brien* v. *City of Highland Park,* 317 Mich. 220, 26 N. W. 2d 891, in support of their contention that, because of the 1957 amendment, the City Manager form of government cannot be put into effect without the people again voting on the question. In that case, the original statute authorized a local option election on the question of placing the city firemen on a civil service basis. Later, the statute was amended to provide for placing policemen on civil service. The Michigan court held that the policemen could not be given the status of civil service employees without the people voting on that particular question. The court pointed out that the question of establishing a civil service in the police department had never been submitted to the electors as provided by statute, and the court said: ''The rule that an amended statute is to be understood as if it had read from the beginning as amended, must not be applied to defeat the plain intent of the legislature in amending it.'' In other words, the Michigan court was of the opinion that the legislature intended that there should be an election on the question of placing policemen on civil service.

In the case at bar, the 1957 amendment makes no radical changes in the 1921 Act. Actually, only one thing is involved, and that is, whether the city shall change from an aldermanic form of government to the city manager system; and the electors have voted in favor of the change. The 1957 amendment to the original act of 1921 goes only to certain details to effectuate a better operation of the act. It is true that under the original act the City Manager was an officer in a branch of the government, and, as such, under the Constitution (Art. 19, § 3), he was required to be a qualified elector. By the amendment he is made an employee, hence he is not now required to be a resident of the city at the time

he is selected as City Manager; and his salary is, therefore, not limited by the Constitution. This enables the Board of Directors to select a qualified manager, who may be from out of the State, and to fix his salary in accordance with many factors that must be taken into consideration, all of which leads to a better operation of the City Manager plan.

When the 1957 amendment was adopted, it became a part of the 1921 act, the same as if the act, as amended, had been in that form from the date of the adoption of the original act. In *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S. W. 707, the City of Fort Smith had adopted the Commission form of government under Act No. 13 of 1913. This act fixed the salaries of certain officers at designated amounts. Later, the General Assembly of 1923 amended the original act by raising the salaries. This court said: "In this connection it may be stated that the amendatory provision of the special session of 1923 from and after its passage became a part of the act of 1913, and in its relation to the sections of that act affected by it, stood with reference to future transactions as though the act had originally been enacted in the amended form. *Mondschein* v. *State,* 55 Ark. 389, 18 S. W. 383; and *Abney* v. *Warren,* 143 Ark. 572, 219 S. W. 748." See also *Kelleher* v. *French,* 22 F. 2d 341.

Appellants maintain that on authority of *McClendon* v. *Board of Health,* 141 Ark. 114, 216 S. W. 289, the City Manager is an officer. In the *McClendon* case, decided in 1919 when there were five members of this court, the City of Hot Springs adopted the provisions of Act 114 of the Acts of 1917, providing for a Commission Manager of Municipal Governments for cities of the first class. The act had no provision as to whether the Commission Manager would be an officer or an employee of the city. This court, by a majority opinion, held that the city manager was an officer. Chief Justice McCulloch and Mr. Justice Frank Smith were of the opinion that the city manager was an employee and not an officer. If the act under consideration at that time (Act 114 of the Acts of 1917) had provided, as does the act under consideration in the case at bar, that the city manager

would be an employee and not an officer, the court would doubtless have given effect to that provision of the act by holding that the city manager was an employee.

Appellants further contend that the *duties* of the manager make him an officer, but it is admitted that all of his acts are subject to the approval of the Board of Directors. The Constitution does not make the manager an officer, and the legislature has specifically provided that he is an employee. There is no constitutional interdiction which requires the court to overrule the General Assembly by saying that the manager is an officer instead of an employee, as he has been designated by the General Assembly. It is further argued by appellants that, for all practical purposes, the City Manager would occupy the same position as that now held by the Mayor and would have the same duties as the Mayor, and therefore, he is an officer. But there are vast differences, among which is the fact that, in the aldermanic system, the Mayor is elected to office for a definite term by the people and he is answerable to the people only. In the City Manager system, the manager is hired as an employee by the Board of Directors; he must answer to the Board and may be discharged by the Board.

It is argued that the offices of City Attorney, City Clerk and City Treasurer are not abolished by the amendment; that they are constitutional officers and cannot become employees. It is further contended that the amendment conflicts with Ark. Stats. Section 19-907, providing that emoluments of office shall not be changed during the term of office. These contentions are answered by pointing out that constitutional offices are not involved; the offices were created by the General Assembly; they may be abolished at will by the General Assembly, and that is exactly what has been done in the case at bar. When the City Manager plan finally goes into effect the offices involved, as they exist today, will be abolished; the incumbents of those offices will no longer hold the offices as a matter of right. True, the present incumbents may be employed by the Board of Directors to carry on necessary work for the city, but

such employment will be solely within the discretion of the Board. In these circumstances, it cannot be said that the offices, as such, have not been abolished.

Next we come to the proposition of the emergency clause. It provides:

"It has been found, and is hereby declared, that the management form of city government authorized under this Act provides an improved and superior method for the administration and government of cities of the first and second class; that many Arkansas cities would be greatly benefited by immediately changing from the aldermanic to the management form of government but that Act 99 of 1921 (and prior amendments thereto) contained defective provisions, cured by the amendments contained in this Act, which grossly impaired the efficiency and desirability of the management plan of reorganization and constituted a deterrent to such municipal reorganizations; that the passage of this Act will make available to cities of the first and second class whose present government is inadequate or inefficient an opportunity to reorganize hereunder and thereby greatly improve the efficiency and economy of their respective municipal governments. Therefore, an emergency is hereby declared to exist and, this Act being necessary for the preservation of the public peace, health and safety, shall take effect and be in force from and after the date of its passage and approval."

The legislature has made a finding that cities of the first and second class whose government is inadequate and insufficient should have an opportunity to reorganize, and that this is a matter of emergency. Every one may not agree that it is an emergency, but that is not the test. The question is whether reasonable people might disagree. In *Cunningham* v. *Walker*, 198 Ark. 928, 132 S. W. 2d 24, in speaking of the validity of an emergency clause, we said: "If fair-minded and intelligent men might reasonably differ as to the sufficiency and truth of the fact assigned, the courts will not interfere. Under this rule the courts determine whether the assigned fact is one with respect to which fair-minded and

reasonable men would differ. The precedent is analogous to that applied in sustaining the verdict of a jury: if there is substantial evidence it will not be disturbed."

It is also contended on appeal that Section 22 of Act 8 of 1957 constitutes the amendment local legislation. The section applies to:

"(a) All cities of the first and second class hereafter electing to reorganize under Act No. 99 of the General Assembly of 1921, approved February 10, 1921, as heretofore amended and as amended in this Act; and

"(b) All cities of the first and second class that have not yet consummated a reorganization into the management form of government but whose electors, prior to the enactment of this amendatory Act, may have voted through an election held pursuant to Section 19-702, Arkansas Statutes (1947) Annotated, to reorganize the city under said Act No. 99 as amended."

The fact that Little Rock may be the only city at the present time coming within the category mentioned in Paragraph (b) of Section 22 does not make the act local legislation. The act applies to all cities that may now or may hereafter be either of the first or second class. Therefore, the act is not local. *Lemaire* v. *Henderson*, 174 Ark. 936, 298 S. W. 327; *City of Blytheville* v. *Ray*, 175 Ark. 1089, 1 S. W. 2d 548; *McLaughlin* v. *Ford*, 168 Ark. 1108, 273 S. W. 707.

The validity of the 1957 amendment is also attacked on the ground that misleading statements were made to the public at the time the manager form of municipal government was adopted. We have examined the newspaper clippings in the record pertaining to the proposed change and do not find any indication that the public was misled.

Affirmed.

McFADDIN, J., concurs; GEORGE ROSE SMITH, J., not participating.