Thomas BURROUGHS, Rev. Robert Nelson, Jr.,
Sidney A. Warner, Jr., Elbert Smith, Wanda Hensley,
Lillian Hodges, Earl Allen, Barry E. Brown, Individually and
as Representatives of a Class of Persons Known as the
Residents of West Memphis, Arkansas *v.*
Mayor Keith INGRAM, Roberta Jackson, Sam Lehr,
Randy Dalton, James Cooper, Maggie Boals, Pritchard Horton,
Gehric Bruce, James Pulliam, Tracy Catt, Al Boals,
Sherry Anderson, Mike Murphy, Jack Hogan, Jim Featherston,
Loutelious Holmes, the City of West Memphis

93-1061                                    893 S.W.2d 319

Supreme Court of Arkansas
Opinion delivered February 20, 1995

*Mike Everett*, for appellants.

*Kent J. Rubens*; and *David C. Peeples*, West Memphis City Attorney, for appellees.

ROBERT H. DUDLEY, Justice. Special meetings of the West Memphis City Council were called, before December 3, 1992, under the authority of Ordinance No. 219. The ordinance provided that a special meeting could be called only when all members of the council either were present or waived notice of the meeting in writing. The ordinance was adopted in 1952 and governed special meetings of the City Council for forty years. On

December 3, 1992, Ordinance No. 219 was amended by Ordinance No. 1561. The latter ordinance amended the original ordinance to provide that a special meeting can be called by the Mayor simply notifying all of the council members. Consequently, it would no longer be necessary for all of the council members to either be present or waive notice in writing. The ordinance amending the method of calling special meetings contained an emergency clause. The validity of that emergency clause is the subject of this case.

Two proposed ordinances were subsequently introduced, proposed Ordinances No. 1564 and 1565, and were read for the first of the three required times at a regular council meeting. Proposed Ordinance No. 1564 would create a West Memphis Water and Light Commission, convey the city-owned water, electric, and waste water utility facilities to the newly created commission, and provide for appointment of commissioners. Because it also contained an emergency clause, all of this would be accomplished before four of the city council members' terms ended December 31, 1992. Proposed Ordinance No. 1565 would combine the municipal offices of clerk and treasurer into one office, and, again, it would take effect before the four council members' terms ended. The proposed ordinances were read for the second time at a special meeting called by the Mayor. One city council member neither waived notice of the special meeting nor did he attend. It was agreed that the second reading of the two proposed ordinances at the special meeting was effective only if the emergency clause of Ordinance No. 1561, the ordinance amending the requirements for a special meeting, was valid. The proposed ordinances were next read at a regular council meeting on December 17, 1992, and both of them passed. They went into effect immediately because both contained an emergency clause.

Appellants, individually and as a class, filed this suit against appellees, the City of West Memphis and various city officials, and sought a declaration that Ordinances Nos. 1564 and 1565 were invalid. They also sought an injunction restraining any action under No. 1564 involving the city-owned water, electric, and waste water utility facilities.

The chancellor ruled that the emergency clause of Ordinance 1561, the ordinance amending the method of calling spe-

cial meetings, is valid and consequently declined to declare Ordinances Nos. 1564 and 1565 invalid. We hold that the emergency clause of Ordinance No. 1561 does not state an emergency, and, as a result, the ordinance did not go into effect immediately. Consequently, we reverse and remand.

■ An emergency clause in a city ordinance has a significant effect on the people's right of referral, and, as a result, the subject of emergency clauses is expressly provided for in the Initiative and Referendum Amendment. *See* Ark. Const. amend. 7. It provides that the people reserve unto themselves the power to repeal all "municipal legislation of every character." *Id.* The people are given "not less than thirty nor more than ninety days after the passage" to refer an ordinance to the people, and, if referred, an ordinance does not become effective until it is approved by the people, unless it contains an emergency clause. *Id.* City councils are authorized to enact an emergency clause and make an ordinance effective immediately only when it is "necessary for the public peace, health and safety," and, in that event, "a measure shall become effective without delay." *Id.* Significantly, the Amendment states that *"[i]t shall be necessary, however, to state the fact which constitutes such emergency." Id.* (emphasis added). It is necessary that two-thirds of all members of a city council vote separately on the ordinance going into effect immediately. *Id.; see also Cunningham* v. *Walker,* 198 Ark. 928, 930-31, 132 S.W.2d 24, 25 (1939).

■ Prior to the adoption of Amendment 7, an emergency clause was attached to almost all laws enacted. To prevent the practice, the framers of Amendment 7 expressly inserted in the Amendment the requirement that *facts constituting the emergency be expressly stated. Gentry* v. *Harrison,* 194 Ark. 916, 110 S.W.2d 497 (1937). Since that time, we have said that it is a matter of legislative determination whether an emergency exists that requires the enactment of an emergency clause, but pursuant to Amendment 7, it is a judicial determination whether facts constituting an emergency are stated. *Cunningham,* 198 Ark. at 931-32, 132 S.W.2d at 26. In *Jumper* v. *McCollum,* 179 Ark. 837, 18 S.W.2d 359 (1929), we held that an emergency clause which does not state a fact that constitutes an emergency is invalid. In *Gentry,* we said there must be some statement of fact to show that "a real emergency existed." *Gentry,* 194 Ark. at 920, 110 S.W.2d at 501.

In *Cunningham*, we said the "academic declaration of a known governmental requirement" is not a statement of a real emergency, and the statement of some "administrative truism" is not the statement of a real emergency. *Cunningham*, 198 Ark. at 932, 132 S.W.2d at 26.

In *Mann* v. *Lowry*, 227 Ark. 1132, 303 S.W.2d 889 (1957), and in *Cunningham*, we set out the test for determining if a real emergency has been stated. We said that if reasonable people might disagree about whether the enunciated fact states an emergency, the clause will be upheld. However, if reasonable people would not think that the facts stated constitute an emergency, then the legislative body has acted arbitrarily and in violation of Amendment 7, and the courts will set the emergency clause aside. The test is analogous to that applied in sustaining the verdict of a jury. *Cunningham*, 198 Ark. at 932, 132 S.W.2d at 26.

Section 14-14-908 of the Arkansas Code Annotated of 1987, in implementation of Amendment 7, provides in pertinent part: "An emergency ordinance may be enacted only to meet public emergencies affecting life, health, safety, or the property of people." Ark. Code Ann. § 14-14-908(a) (1987).

The emergency clause in Ordinance No. 1561, the ordinance containing the amendment for special meetings of the council, provides:

> It having been found and determined by the City Council of the City of West Memphis, Arkansas, that the existing procedures for calling special meetings of the City Council are more restrictive than required by law and should be amended in order to provide for the efficient operation of city government and that time is of the essence, an emergency is hereby declared to exist, and this ordinance being necessary for the preservation of the public peace, health, safety and welfare of the citizens of West Memphis, Arkansas, shall be in full force and effect from and after the date of its passage and approval.

The first fact stated is that "the existing procedures for calling special meetings of the City Council are more restrictive than required by law." No fair-minded person would think the state-

ment sets out a "real emergency." The word "emergency" in its most accepted usage means some sudden or unexpected happening that creates a need for action. The clause does not recite a fact showing that some sudden or unexpected happening has occurred, nor does it give a reason that the ordinance providing for special meetings must immediately be amended. There is no statement showing that the ordinance that had provided for calling special meetings for forty years had, for some unexpected reason, become so ineffectual that an emergency existed. There is no statement, as required by Amendment 7, to show that either the public peace, or health, or safety required that the forty-year special-meeting ordinance needed immediate and emergency amendment. The statement was nothing more than an "academic declaration of a known governmental requirement," and such declarations do not validly state an emergency. *Cunningham*, 198 Ark. at 932, 132 S.W.2d at 26.

The next fact stated is that the then-existing ordinance should be amended "to provide for the efficient operation of city government." Again, no fair-minded person would think the statement sets out a real emergency, for governments should always be operated efficiently, and many, if not most, statutes and ordinances have something to do with governmental efficiency. Governmental efficiency in this ordinance meant calling special meetings by notice by the Mayor, and that does not state an emergency. There is no statement to show that some unforeseen occurrence caused the existing ordinance for special meetings to be injurious to life, health, or safety. We declared a comparable statement of fact did not constitute the statement of an emergency in *Gentry*.

The final fact recited is the statement that "time is of the essence." This phrase contains no fact showing that it is material to the ordinance; it adds nothing to the phrases already set out. It is boilerplate. The ordinance might as well have provided "this is an emergency," and that is not sufficient to meet the requirements of Amendment 7. *Gentry*, 194 Ark. at 921, 110 S.W.2d at 501.

In *Gentry*, we wrote:

> To hold that the legislature could state a fact as constituting an emergency, which obviously did not constitute

> an emergency, and which no one would believe constituted an emergency, would simply abolish the amendment [Amendment 7] adopted by the people.

*Id.* at 921, 110 S.W.2d at 501. The same reasoning applies in this case. No fact was stated in the emergency clause of Ordinance No. 1561 that required the ordinance to become effective immediately in order to preserve either the peace or the health and safety of the public, as required by Amendment 7. To uphold the emergency clause under such circumstances would be to abolish the amendment adopted by the people.

Reversed and remanded for proceedings consistent with this opinion.

GLAZE, CORBIN, and BROWN, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. The majority opinion correctly cites the standard this court must apply in deciding this case — whether reasonable minds would disagree that the enunciated facts state an emergency. *Cunningham* v. *Walker,* 198 Ark. 928, 132 S.W.2d 24 (1939).

A picture is worth a thousand words, so if the reader will indulge me, visualize this scenario: seven justices seated around a large conference table debating the ultimate legal issue of whether the wording in the emergency clause of the ordinance sufficiently reflected an emergency. Four justices said no and three said yes. The reader will enjoy observing whether we had seven, four, or three reasonable minds.

I think it patently clear that the four to three divided vote of this court illustrates the differing of reasonable minds. If the seven justices of this court are of reasonable minds and are divided four to three in answering the ultimate legal issue, then the only permissible conclusion in this case is that the law-making body recited sufficient facts to constitute an emergency. Here, the majority disregards the obvious and mandatory answer to the question presented, and persists in producing inconsistent, unpredictable law which reduces the lawyers of this state to guesswork when advising their clients. The citizens of this state deserve better.

The majority relies heavily on its own assertion that the

facts recited in the instant emergency clause amount to an "administrative truism" or an "academic declaration of a known governmental requirement" which is prohibited by *Cunningham. See id.*, 198 Ark. at 930, 132 S.W.2d at 26. However, the majority makes no attempt to distinguish the similar case of *Mann* v. *Lowry*, 227 Ark. 1132, 303 S.W.2d 889 (1957), although the majority cites with approval the law from that case. In *Mann*, this court held that a legislative act providing an "'improved and superior method for the administration and government of cities of the first and second class'" validly stated an emergency. *Id.* at 1139, 303 S.W.2d at 892. I see no distinction in the emergency clause upheld in *Mann* and the emergency clause invalidated in the present case.

I respectfully dissent.

BROWN, J., joins in this dissent.