Cite as 2019 Ark. 403

# SUPREME COURT OF ARKANSAS

No. CV-19-641

|  |  |
|---|---|
| | **Opinion Delivered** December 17, 2019 |
| SAFE SURGERY ARKANSAS, A BALLOT QUESTION COMMITTEE AND SPONSOR, AND LAURIE BARBER, M.D., INDIVIDUALLY AND ON BEHALF OF SAFE SURGERY ARKANSAS<br>PETITIONERS | AN ORIGINAL ACTION PETITION FOR WRIT OF MANDAMUS |
| V. | <u>PETITION GRANTED IN PART;</u> <u>DENIED IN PART</u>. |
| JOHN THURSTON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE<br>RESPONDENT | <u>SUBSTITUTED OPINION</u>. |
| STATE OF ARKANSAS<br>INTERVENOR | |
| ARKANSANS FOR HEALTHY EYES, A BALLOT QUESTION COMMITTEE; AND VICKI FARMER, INDIVIDUALLY AND ON BEHALF OF ARKANSAS FOR HEALTHY EYES<br>INTERVENORS | |

**JOSEPHINE LINKER HART, Associate Justice**

Petitioners Safe Surgery Arkansas and Laurie Barber (SSA) filed in this court a petition for a writ of mandamus against respondent John Thurston in his official capacity as Arkansas Secretary of State (Secretary of State). Arkansans for Healthy Eyes and Vicki Farmer (AHE) intervened. The mandamus petition seeks to compel the Secretary of State to count signatures SSA obtained in support of a ballot petition for a referendum on Act

579 of 2019. The Secretary of State had refused to count most of the signatures, opining that they were obtained in violation of Act 376 of 2019. Act 376 added additional requirements for getting a referendum on the election ballot. SSA seeks to have the signatures counted pursuant to the pre-Act 376 legal framework, advancing two arguments in support: (1) Act 376's emergency clause was defective, meaning the changes contained in Act 376 did not go into effect until after SSA had already filed its ballot petition, or (2) if Act 376's emergency clause was effective, the substance of the act is nonetheless violative of both the Arkansas and United States Constitutions.

Our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1–2(a)(3).[1] Because we agree with SSA's argument that Act 376's emergency clause was defective, we do not reach SSA's arguments regarding Act 376's constitutionality. We grant SSA's mandamus petition insofar as it seeks to have its referendum-related filings, including the signature pages, addressed pursuant to the pre-Act 376 framework.

I. *Legal and Factual Background*

Article 5, section 1 of the Arkansas Constitution protects the people's right to petition for a referendum on any act of the general assembly. To get a referendum on the ballot for statewide election, the referendum's sponsor must, among other things, obtain signatures from at least 6 percent of eligible voters in the state. Ark. Const. art. 5, § 1. After a proposed referendum is placed on the ballot, if a majority of voters elect in favor of the referendum at the election, the act in question is repealed. *Id.*

---

[1]The responding parties filed a motion to dismiss, arguing that this court lacked jurisdiction. We denied the motion.

2

In the 2019 legislative session, the Arkansas General Assembly passed Act 376. Act 376 purported to change the process by which the people of this State may pursue a ballot initiative or referendum. Relevant here is the manner and order in which a referendum petition's sponsor must obtain sworn statements from its paid canvassers. Since before Act 376, paid canvassers have been required to give a written statement to the petition's sponsor, swearing they have never been convicted of certain crimes that would disqualify them from serving as a paid canvasser. *See* Ark. Code Ann. § 7-9-601(d)(3) (Repl. 2018). Act 376 adds the requirement that the sponsor must give those statements to the Secretary of State *before* the canvasser can begin collecting signatures.[2] Normally, a law enacted by the legislature becomes effective ninety days after the adjournment of the session in which the law is passed, but Act 376 contained an emergency clause purporting to give it immediate legal effect.

Also in the 2019 legislative session, the Arkansas General Assembly passed Act 579. Act 579 changed the law to allow optometrists to perform certain surgeries that were previously reserved for medical doctors.

On June 14, 2019, SSA submitted to the Secretary of State a popular name and ballot title for a proposed referendum on Act 579 to appear on the November 2020 ballot. On July 23, 2019, SSA submitted to the Secretary of State a petition "spanning 12,570 parts, which collectively bore at least 84,114 signatures" in support of a referendum on Act 579 being placed on the November 2020 ballot.

---

[2]*See* 2019 Ark. Acts 376, § 13 ("Before a signature is solicited by a paid canvasser the sponsor shall: . . . [s]ubmit to the Secretary of State a copy of the signed statement provided by the canvasser [to the sponsor].").

On August 2, 2019, the Secretary of State notified SSA of its refusal to certify a referendum on Act 579 because the petition only contained "23,953 signatures on its face." The basis of this conclusion was that the sworn statements from (at least some) of SSA's canvassers had not been filed with the Secretary of State before those canvassers began collecting signatures in support of the referendum.

On August 13, 2019, SSA filed in this court an original action seeking a writ of mandamus. SSA seeks to compel the Secretary of State to address the proposed referendum according to the pre-Act 376 legal framework. In support, it argues: (1) that Act 376's emergency clause was defective, and that Act 376 therefore did not become effective until July 24, 2019—after SSA had already collected the signatures and filed its petition with the Secretary of State; and (2) even if Act 376's emergency clause was effective, the substance of the act is nonetheless violative of both the Arkansas and United States Constitutions. Our analysis of Act 376's emergency clause controls the outcome of this matter, and we accordingly do not reach SSA's remaining arguments.

## II. *Emergency Clause*

The Arkansas Constitution provides that a law may become effective immediately only when it contains an emergency clause that states the "fact which constitutes such emergency." Ark. Const. art 5, § 1. But not just any alleged "fact" qualifies as an "emergency" under the Arkansas Constitution; emergency clauses are appropriate only "[i]f it shall be necessary for the preservation of the public peace, health and safety that a measure shall become effective without delay[.]" *Id*. An emergency clause that merely recites an "administrative truism" or an "academic declaration of a known governmental

4

requirement" does not satisfy the emergency requirement. *Burroughs v. Ingram*, 319 Ark. 530, 534, 893 S.W.2d 319, 321 (1995) (quoting *Cunningham v. Walker*, 198 Ark. 926, 932, 132 S.W.2d 24, 26 (1939)). The "test" for determining if a real emergency has been stated is as follows:

> [*I*]*f reasonable people might disagree* about whether the enunciated fact states an *emergency*, the clause will be *upheld*. However, *if reasonable people would not think* that the facts stated constitute an *emergency*, then the legislative body has acted arbitrarily and in violation of Amendment 7, and the courts will *set the emergency clause aside*.

*Burroughs*, 319 Ark. at 534 (emphasis added). In this context, we have noted that "the word 'emergency' in its most accepted usage means some sudden or unexpected happening that creates a need for action." *Id*. at 535.

As to the emergency clause contained in Act 376, the "facts" offered by the legislature to satisfy the emergency requirement are as follows:

> It is found and determined by the General Assembly, . . . that the provisions of this act should become effective *immediately* so that its provisions apply to all petitions circulated after the passage of the act *to avoid confusion in petition circulation*. Therefore, an emergency is declared to exist.

Act 376 of 2019, § 14 (emphasis added).

The stated basis of Act 376's emergency clause is "to avoid confusion in petition circulation." At best, Act 376's emergency clause simply declares that there is a need for greater notice of a change in the law. Despite capable efforts by counsel to characterize its facial language more pressingly, Act 376's emergency clause does not satisfy article 5, section 1's requirements; in other words, this is not an "emergency."

It is important to note that, regardless of when a law is passed, the people are never more than two years from visiting the ballot box where they will vote on any proposed

5

initiatives or referenda. The prospect of affording those who seek to file a ballot petition additional notice of new requirements for that petition, especially when the people would not be voting on any such initiatives or referenda for at least another fifteen months (assuming that the operative date for Act 376 without an effective emergency clause is July 24, 2019), does not amount to an emergency. By the terms of the responding parties' arguments, the only "sudden or unexpected happening" that could have created the requisite "need for action" here would be the passage of Act 376 itself. *Burroughs*, 319 Ark. at 535, 893 S.W.2d at 321. Act 376's emergency clause is not responsive to some real-life circumstance making immediate legislative enactment "necessary for the preservation of the public peace, health and safety," as contemplated by article 5, section 1 of the Arkansas Constitution.

Without expressing any opinion on the constitutional appropriateness of the rule changes themselves, we can readily determine that this situation does not amount to an "emergency," and that *reasonable* people could not disagree on this question. Act 376's emergency clause is therefore set aside.

### III. *Writ of Mandamus*

Petitioners seek a writ of mandamus, the purpose of which is "to enforce an established right or to enforce the performance of a duty." *See Brown v. Gibson*, 2012 Ark. 285 at 2, 423 S.W.3d 34, 35. The writ is issued when (1) the duty to be compelled is ministerial and not discretionary; (2) the petitioner has shown a clear and certain right to the relief sought; and (3) the petitioner lacks any other adequate remedy. *See generally Lonoke*

*Cnty. v. City of Lonoke*, 2013 Ark. 465, at 2, 430 S.W.3d 669, 670; *Parker v. Crow*, 2010 Ark. 371, at 5–6, 368 S.W.3d 902, 907.

The Secretary of State's obligation to count and verify signatures for initiatives and referenda is a ministerial duty, dictated by the constitution and by statute. As Act 376's emergency clause was ineffective, the act's new requirements were not in effect at the time SSA filed its proposed referendum and supporting signatures. SSA has therefore shown a clear and certain right to have its referendum filings addressed under the pre-Act 376 framework. A writ of mandamus directing the Secretary of State to address SSA's filings under the pre-Act 376 framework is the only adequate remedy.

Accordingly, we direct the Secretary of State to address SSA's filings seeking a referendum on Act 579 pursuant to the pre-Act 376 legal framework for initiatives and referenda. We need not reach SSA's arguments regarding Act 376's constitutionality, and we decline to do so. We also decline SSA's request that we address the propriety of the popular name and ballot title for the proposed referendum on Act 579, as well as its request that we simply order the Secretary of State to certify the proposed referendum to the November 2020 ballot. No party to this action has disputed the propriety of the referendum's popular name or ballot title, so any opinion from this court on those issues would be advisory. Furthermore, even under the pre-Act 376 framework for initiatives and referenda, the supporting signatures still must be reviewed by the Secretary of State before such issues become ripe for judicial consideration, and that pre-Act 376 review process has not yet been completed.

Petition granted in part; denied in part.

7

WOOD, J., concurs.

KEMP, C.J., and HUDSON and WOMACK, JJ., dissent.


**RHONDA K. WOOD, Justice, concurring.** I agree with the majority's decision but write separately to further address what I feel is the heart of the court's decision. Our constitution places limits on each branch of government. One such constitutional limit is that the General Assembly may make an act immediately effective only if "necessary for the preservation of public peace, health and safety." Ark. Const. art. 5, § 1. For almost a hundred years, this court has explained that "[i]t is not sufficient, under [article 5, section 1], for the legislation merely to declare that an emergency exists, but it is necessary to state the fact which constitutes such emergency." *Jumper v. McCollum*, 179 Ark. 837, 839, 18 S.W.2d 359, 360 (1929).

Constitutionally, emergencies must impact the "public peace, health and safety" of Arkansans. The dissent speculates that the General Assembly believed an emergency existed because petitions in the upcoming election cycle needed to be governed by a single set of rules. But Act 376's emergency clause did not state how or why bureaucratic difficulties and confusion in the petition-application process would impact the public peace or Arkansas citizens' health and safety. The constitution requires this, and we cannot impute facts or hypothesize scenarios that are absent from the Act's actual language.

The court's role is to decide whether the emergency clause as written passes constitutional muster. Absent the General Assembly providing some facts in the emergency clause explaining what constituted an emergency to the "preservation of public peace, health

8

and safety," we did not have facts to provide it deference, and we did not have facts on which reasonable minds could disagree.

**SHAWN A. WOMACK, Justice, dissenting.** I disagree with the majority's conclusion that Act 376's emergency clause is defective. A law becomes effective immediately when it includes an emergency clause that "state[s] the fact which constitutes such emergency." Ark. Const. art. 5, § 1. In the emergency clause of Act 376, the General Assembly stated the act should become effective immediately so that "its provisions apply to all petitions circulated after the passage of the act to avoid confusion in petition circulation." 2019 Ark. Acts 376, § 14. The majority dismisses the emergency clause as merely providing notice of a change in the law regarding issues people will not vote on for at least another fifteen months. This misreads the plain language as to the purpose of the emergency clause and imputes legislative intent that does not exist in the text. The clause is not merely a notice about things to come in next year's election; rather, it is a necessary element of timing to ensure that future petitions are treated equally so that some petitions are not governed by one set of rules while others in the same election cycle are governed by a different set of rules and to avoid the public confusion that would derive from such a scenario. The result of the majority's opinion today ensures that not only are petitions for some issues in the same cycle treated differently, but it creates a situation where various petition documents for the same issue are subject to different legal requirements. For these reasons, immediate application of Act 376 is necessary "for the preservation of the public peace" as contemplated by article 5, section 1 of the Arkansas Constitution.

Furthermore, this court is to give great deference to legislative determinations of whether an emergency exists. *Gulledge v. Barclay*, 350 Ark. 98, 103, 84 S.W.3d 850, 853 (2002). The fact that everyone may not agree that the facts stated by the legislature constitute an emergency is not the test for determining the validity of an emergency clause; the question is whether reasonable people might disagree. *Mann v. Lowry*, 227 Ark. 1132, 303 S.W.2d 889 (1957). If reasonable people do disagree, the emergency clause will be upheld. *Priest v. Polk*, 322 Ark. 673, 912 S.W.2d 902 (1995). By finding the emergency clause of Act 376 defective, the majority is, in effect, stating that no *reasonable* person could believe the act's amendment to the initiative and referendum process—an integral part of Arkansans' democratic participation—constitutes an emergency for which immediate effectiveness is demanded. Such an assertion by the majority is, in my opinion, disingenuous and born of hubris. The majority, in this 4–3 decision, is essentially saying that it alone possesses the capacity of reasonable interpretation—not the 78 duly elected men and women of the Arkansas House of Representative who voted for the bill, not the 26 duly elected men and women of the Arkansas Senate who voted for the bill, and not the three dissenting justices of the Arkansas Supreme Court.

Accordingly, I dissent.

KEMP, C.J., and HUDSON, J., join in this dissent.

*Steel, Wright & Gray, PLLC*, by: *Alex Gray* and *Nate Steel*; *Kelly Law Firm, PLC*, by: *A.J. Kelly*; and *Ryan Owsley*, for petitioners.

*Kutak Rock LLP*, by: *Jess Askew III*, *Ashley Hudson*, *Andrew King*, and *Frederick H. Davis*; and *Dale W. Brown*, for intervenors Arkansans for Healthy Eyes and Vicki Farmer.

*Leslie Rutledge*, Att'y Gen., by: *William C. Bird III*, Senior Ass't Att'y Gen., for intervenors.

*Gary L. Sullivan* and *Peyton Murphy*, Arkansas Secretary of State's Office, for respondent.

*Michael A. Stokes*, of counsel, American Optometric Association; and *Everett Law Firm*, by: *John C. Everett*, for amicus curiae, American Optometric Association.