SPA KENNEL CLUB *v.* DUNAWAY

5-3967                                    406 S. W. 2d 128

Opinion delivered September 19, 1966

*Rose, Meek, House, Barron, Nash & Williamson,* for appellant.

*Bruce Bennett,* Attorney General; *Fletcher Jackson,* Asst. Atty. Gen., for appellee.

OSRO COBB, Justice. The General Assembly passed Act 191 in 1957, same being an Act to legalize, under certain conditions, greyhound racing and parimutuel wagering thereon in all political subdivisions of the State and to regulate same. Section 6(A) of Act 191 provides as follows:

"Except as otherwise hereinafter provided, the (Arkansas Racing) Commission shall not be authorized to grant, nor shall it grant, a franchise to any county in this State unless and until the proposition of Greyhound Racing shall have been approved by a majority of the qualified electors of such county at a special election called for that purpose." (Parenthesis supplied.)

The mechanics for holding such an election are set forth under the provisions of Section 9 of Act 191. Subsection (A) of Section 6 of the Act was amended by Act 56 of 1961. However, that amendment is irrelevant to the issues presented on this appeal.

In 1965 appellant obtained from appellee a temporary franchise under Act 191, applicable solely to Garland County; thereafter, acting pursuant to the provisions of Section 9 of Act 191, appellee notified the County Board of Election Commissioners to call a special election to submit the issue of Greyhound Racing in Garland County to the qualified electors of said County. The Election Commissioners of Garland County called the special election for November 23, 1965. Prior to that date, an Extraordinary Session of the General Assembly was called by Governor Orval E. Faubus, and Act No. 7 of the Extraordinary Session of 1965 was passed, including an emergency clause, and was duly approved by the Governor on November 6, 1965. The declared intent of Act 7 was to abolish local option elections by political subdivisions on the question of legalizing Greyhound Racing and to require approval of any such franchise by a majority of the qualified electors voting in a Statewide Biennial General Election. See Section 1 (A) of said Act.

Appellee thereafter cancelled the temporary franchise of appellant solely because of the provisions of Act 7.

Appellant filed a petition for declaratory judgment

seeking an order of reinstatement of their temporary franchise. The Attorney General, representing the Arkansas Racing Commission, filed a demurrer to appellant's petition, which was sustained by the trial court, appellant's petition being dismissed.

On appeal appellant raises three points, all relating to Act 7 of the Extraordinary Session of 1965. Appellant's points:

No. 1.  Act 7 should not be construed to retroactively apply to appellant.

No. 2.  The emergency clause in Act 7 is special and local, and is void.

No. 3  Act 7 is void because introduced within the last three days of the session.

*Appellant's Point No. 1.*

In support of this point appellant calls our attention to *New York R. R. Co.* v. *Pennsylvania,* 153 U. S. 628, and *Houston & T. C. R. Co.* v. *Texas,* 170 U. S. 243. These cases involved statutory and/or constitutional authority for construction of certain railroads, or specified segments thereof and subsequent operation of same. Furthermore, in these cases the construction had long since been completed and the rights of the respective parties were in no way conditioned upon a local or general election. The cases, therefore, are clearly distinguishable from the facts in the instant case. Moreover, appellant has not cited any case authority where the facts are comparable to those of the instant case.

Appellant was specifically prohibited by the provisions of Act 191 of 1957 from any dog racing operations until after the special election on that issue. Whether such racing proposal would have been approved or rejected at the special election called for November 23, 1965, and which was never held, is a matter of complete conjecture. It is, therefore, clear that appellant's rights

at the time of cancellation of its temporary franchise, which occurred prior to the special election on November 23, 1965, were prospective in character. Furthermore, we have held in *Arkansas Racing Commission* v. *Hot Springs Kennel Club, Inc.*, 232 Ark. 504, 399 S. W. 2d 126 (1960):

"* * * It is well recognized by all authorities that a franchise granted by the State to conduct dog racing, just as a franchise to sell liquor, is a privilege and not a property right. The State gives the privilege and it can take away that privilege by the same token.* * *""

We find no merit in appellant's contentions under Point No. 1.

*Appellant's Point No. 2—The validity of the emergency clause as a part of Act 7.*

We quote the entire emergency clause of Act 7 of the Extraordinary Session of the General Assembly of 1965:

"Section 6. The General Assembly has determined that: (1) the approval of pari-mutual wagering on Greyhound Racing in any county in this State is a matter of vital concern to the people of the entire State, (2) improvements already completed and now being made in means and methods of communication and transportation (particularly in the State and Interstate Highway Systems) render it impossible to confine the economic impact of such wagering to a single county, and (3) an election has been called to submit the question of pari-mutuel wagering on Greyhound Racing in Garland County to the electors of that county on November 23, 1965. Therefore, the General Assembly finds and declares that because of the vital concern of the people of the entire State in the matter of pari-mutuel wagering on Greyhound Racing an emergency exists

and that this Act, being necessary for the preservation of the public peace, health and safety shall be in full force and effect on and after its passage and approval.''

Appellant invites our attention to *Matthews v. Byrd,* 187 Ark. 456, 60 S. W. 2d 909 (1933), wherein we clearly recognized that those portions of statutes found to be invalid could be severed from the remaining valid provisions of such enactments. We do not recede from that view. However, while recognizing that the emergency clause is subject to separate attack as to its validity, we note that appellant has not cited any case authority in support of its contention that the emergency clause above quoted is special and local and thus invalid, and offensive to the provisions of Amendment 14 of our present Constitution. (1874).

We therefore find no merit in the contentions of appellant's Point No. 2.

*Appellant's Point No. 3—The alleged invalidity of Act 7 of the Extraordinary Session of the General Assembly, 1965.*

Section 34 of Article 5 of our current Constitution (1874) provides as follows:

''No new bill shall be introduced in either House during the last three days of the session.''

It is conceded that the bill which became Act 7 of the Extraordinary Session of 1965 was introduced during the last three days of the Extraordinary Session. If Section 34 of Article 5 of our Constitution were the only expression of the framers of that instrument as to sessions of the General Assembly, then this point by appellant could have unquestioned merit. However, the framers of our Constitution divided the powers—Article 5 relating to the legislative department; Article 6 re-

lating to the executive department, and Article 7 relating to the judicial department.

Section 2 of Article 6 reposes the supreme executive power of this State in the Governor, and Section 19 of Article 6 authorizes the Governor to summon the general assembly into extraordinary session when in his judgment an emergency exists requiring same. The extraordinary sessions of the general assembly are not to be confused with the regular 60-day sessions held every two years, as provided under Section 5 of Article 5. Louisiana has constitutional provisions virtually identical with those of Arkansas in relation to regular and extraordinary sessions of its general assembly. In *State ex rel Saint* v. *Dowling,* 167 La. 907, 120 Sou. 593 (1928), it was held that the special or extraordinary sessions are of such exceptional character and are so limited as to duration and to objects of legislation that they are not even included under the heading of "legislative department" in the present Constitution, but are placed under the heading of "executive department," and within the control of the Governor. See *Opinion of the Justices,* 275 Ala. 102, 152 Sou. 2d 427 (1963). See also *Discussion* in Volume 81, C. J. S., Section 37, beginning at page 952.

While the action of the Governor in calling an extraordinary session is not reviewable, laws enacted during such extraordinary sessions are reviewable in the courts when properly challenged as to validity.

The question of the application of the time limitation referred to in Section 34 of Article 5 to bills introduced during extraordinary sessions of the general assembly is one of first impression here. Appellant has cited no case authority from any sister State having constitutional provisions similar to ours which limits or invalidates such emergency legislation because of any stated time element in processing the emergency legislaon. It is conceivable that an emergency could develop which, in the judgment of the Governor and the mem-

bers of the General Assembly, required legislative action in less than three days. While the General Assembly is a deliberative body using 60 days for its regular sessions, it can, in response to the call of the Governor, meet and pass emergency legislation as the conditions may require in the public interest.

We therefore find no merit in appellant's Point No. 3, and having found no merit in any of appellant's contentions, the dismissal of appellant's petition in the trial court is affirmed.