STATE of Washington, *et al. v.*
William Gordon THOMPSON

99-612 6 S.W.3d 82

Supreme Court of Arkansas
Opinion delivered December 9, 1999

418

*Barbara Morris Williams*, for appellants.

*John D. Garnett*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This is a child-support case. The Child Support Enforcement Unit (CSEU) appeals the trial court's decision staying enforcement of a foreign support order on the basis of lack of personal jurisdiction. Specifically, CSEU argues that the trial court erroneously allowed Mr. Thompson to present defenses which were barred when he failed to request a hearing to contest the validity of the order under Ark.

Code Ann. § 9-17-606 (Repl. 1998). CSEU asserts that the trial court erred in considering these defenses and declaring the statute unconstitutional. We affirm in part and reverse in part for the reasons stated below. This case arises out of a child-support order entered by the Superior Court of Washington on August 9, 1990. The order was entered by reason of default due to Mr. William Gordon Thompson's failure to respond or appear. The Washington court found that Mr. Thompson was the father of Stephen Uhler, who was age eight at the time, and ordered Mr. Thompson to pay child support in the amount of $474.00 per month. A judgment for arrears was granted in the amount of $30,353.00 for the period April 1985 through July 1990, and Mr. Thompson was ordered to pay an additional $253.00 per month toward that arrearage. Satisfaction of this judgment was pursued by the garnishment of Mr. Thompson's wages and the withholding of his income-tax refunds during 1991 and 1992, with credit for an overpayment of $1,250 for the year of 1991. No other payments on the judgment were made after 1992.

On May 21, 1998, a child-support enforcement transmittal from the State of Washington was filed in the Pulaski County Chancery Court, seeking registration and enforcement of the Washington order under the provisions of the Uniform Interstate Family Support Act (UIFSA), Ark. Code Ann. § 9-17-101 *et seq.* (Repl. 1998). Mr. Thompson was personally served on June 10, 1998, with this transmittal and attachments, including a UIFSA packet, notice of registration, summons, and motion for contempt. Twenty days later, on June 30, 1998, Mr. Thompson filed a *pro se* response stating simply "I deny everything." On July 16, 1998, Mr. Thompson's attorney filed an amended answer denying all of the material allegations in the motion for contempt, and pleading the affirmative defenses of estoppel, laches, unclean hands, waiver, set-off, unjust enrichment, lack of in personam jurisdiction, and failure of consideration.

Mr. Thompson also filed a motion to dismiss on July 16, 1998, asserting that he was improperly served with notice of the Washington proceedings. In support of that assertion, he filed several affidavits. An affidavit of service by the process server for the State of Washington reflected that a twenty-six-year-old male with a broken leg who claimed to be Mr. Thompson's ex-roommate (although the process server suggested that he fit Mr. Thompson's

description perfectly) was served on February 16, 1990, with the summons and petition for paternity at the address given for Mr. Thompson in the town of Puyallup, Washington. An affidavit by Mr. Thompson averred that he was living with his parents in Graham, Washington, from November 1989 until May 1990, that he was not domiciled at the Puyallup address on February 16, 1990, and that he was never served with the complaint or any pleadings in the Washington proceedings. Affidavits by Mr. Thompson's mother and a family friend corroborated his residency with his parents in Graham, Washington, during the pertinent time period. Mr. Thompson additionally asserted in the motion to dismiss that his due process rights had been violated because he was entitled to a hearing to contest the validity of the registered order pursuant to Ark. Code Ann. §§ 9-17-606 and 607 (Repl. 1998).

On August 19, 1998, the chancery court issued an order and citation directing Mr. Thompson to appear for hearing on September 16, 1998. During that hearing, Mr. Thompson testified that at the time he was personally served on June 10, 1998, he was only given the summons for the Arkansas proceeding. He claimed that the child-support enforcement transmittal and attachments were mailed to him at a later time, and that he never received service of the notice of registration. Mr. Thompson also reiterated the information previously submitted by affidavit in support of his assertion that he had never been served with notice of the Washington proceedings against him. Although he claimed that his ex-roommate never forwarded the Washington court papers to him, Mr. Thompson admitted that he became aware of the child-support action in 1991 after his income taxes were withheld and his wages garnished. CSEU argued that Mr. Thompson was precluded from asserting any defenses since he did not request a hearing within twenty days of being served with process. The trial court then continued the hearing until October 21, 1998, in order to allow CSEU to present testimony rebutting Mr. Thompson's assertions that he was improperly served with Arkansas process.

On September 30, 1998, Mr. Thompson filed a second amended answer restating all previous defenses and answers, and adding that Ark. Code Ann. § 9-17-606 violated his due process rights pursuant to the Fifth Amendment as applied through the Fourteenth Amendment of the United States Constitution and Art. 2, § 8, of the Arkansas Constitution on the basis that a party would

be precluded from any hearing and raising any defenses if he only filed an answer. On October 1, 1998, Mr. Thompson sent notice to the Attorney General's office of his challenge to the constitutionality of Ark. Code Ann. § 9-17-606.

On October 21, 1998, CSEU presented the testimony of Mr. Ken Williamson, a process server, who stated that he had reviewed the papers to be served prior to actual service on Mr. Thompson on June 10, 1998. Mr. Williamson confirmed that the notice of registration was in the packet. He further testified that he completed the return of service and listed each document served, including the notice of registration. Mr. Thompson then amended his prior testimony, stating that he did receive the child-support enforcement transmittal and the motion for contempt on June 10, 1998, but that he never received the notice of registration.

On January 25, 1999, the trial court entered its order, finding that Mr. Thompson did receive the notice of registration and that service was proper insofar as it related to the Arkansas proceeding. However, the court found that Mr. Thompson was not precluded from contesting the validity of the Washington order despite his failure to request a hearing as directed by the notice of registration and Ark. Code Ann. § 9-17-606. Specifically, the court held that the hearing request requirement in section 9-17-606 violated due process and was fundamentally unfair in that it denied a defendant the right to challenge the underlying judgment simply for failing to request a hearing in a responsive pleading or a separate pleading. The court noted that in this case Mr. Thompson filed a *pro se* response within the twenty-day time limit which stated "I deny everything," and that CSEU served notice of a contempt hearing at the time Mr. Thompson was served with the UIFSA packet.[1] Based on these circumstances, the court also concluded that it would be fundamentally unfair in this case to deny Mr. Thompson the right to contest the order, even in the absence of a due process violation. Finally, the court found that the State of Washington lacked personal jurisdiction over Mr. Thompson based on improper service of process in that state's proceeding. The court thereby

---

[1] The record actually reflects that Mr. Thompson was served with a motion for contempt which requested that "the defendant be cited to appear at a hearing for contempt . . ."

stayed enforcement of the Washington support order, and this appeal was taken.

CSEU argues on appeal that the trial court erred in declaring section 9-17-606 unconstitutional as a deprivation of due process, and consequently erred in considering Mr. Thompson's jurisdictional defenses as he failed to request a hearing within the twenty-day period mandated by that statute. Conversely, Mr. Thompson argues that the statute's effect is to deny a nonregistering party due process by denying that party an opportunity to be heard, in contravention of the due process guarantees of the United States Constitution, and that his responsive pleading was sufficient to indicate that he desired a hearing.

The challenged statute, Ark. Code Ann. § 9-17-606, states in pertinent part:

> (a) A nonregistering party seeking to contest the validity or enforcement of a registered order in this state shall request a hearing within twenty (20) days after notice of the registration. The nonregistering party may seek to vacate the registration, to assert any defense to an allegation of noncompliance with the registered order, or to contest the remedies being sought or the amount of any alleged arrearages pursuant to § 9-16-607 (Contest of registration or enforcement).

> (b) If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law.

> (c) If a nonregistering party requests a hearing to contest the validity or enforcement of the registered order, the registering tribunal shall schedule the matter for hearing and give notice to the parties of the date, time, and place of the hearing.

Pursuant to Ark. Code Ann. § 9-17-605(a) (Repl. 1998), the registering tribunal shall notify the nonregistering party when a foreign support order is registered. The notice of the registration must inform the nonregistering party:

> (1) that a registered order is enforceable as of the date of registration in the same manner as an order issued by a tribunal in this state;

(2) that a hearing to contest the validity or enforcement of the registered order must be requested within twenty (20) days after notice.

(3) that failure to contest the validity or enforcement of the registered order in a timely manner will result in confirmation of the order and enforcement of the order and the alleged arrearages and precludes further contest of that order with respect to any matter that could have been asserted; and

(4) of the amount of any alleged arrearages.

Ark. Code Ann. § 9-17-605(b). Personal jurisdiction is specifically listed as a basis for contesting the validity of a foreign support order in Ark. Code Ann. § 9-17-607 (Repl. 1998), which states in pertinent part:

(a) A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one (1) or more of the following defenses:

(1) the issuing tribunal lacked personal jurisdiction over the contesting party;

\* \* \*

(b) If a party presents evidence establishing a full or partial defense under subsection (a), a tribunal may stay enforcement of the registered order, continue the proceeding to permit production of additional relevant evidence, and issue other appropriate orders. An uncontested portion of the registered order may be enforced by all remedies available under the law of this state.

(c) If the contesting party does not establish a defense under subsection (a) to the validity or enforcement of the order, the registering tribunal shall issue an order confirming the order.

Once a registered support order is confirmed, whether by operation of law or after notice and a hearing, further contest of the order is precluded. Ark. Code Ann. § 9-17-608 (Repl. 1998).

■ We agree with CSEU that the above-quoted statutory provisions prescribe the method for contesting the validity of a registered support order. Section 9-17-606 states clearly that a person "seeking to contest the validity" of an order "shall" request a hearing. Under our principles of statutory construction, "shall" is

mandatory. *Greene v. State,* 335 Ark. 1, 977 S.W.2d 192 (1998); *Campbell v. State,* 311 Ark. 641, 846 S.W.2d 639 (1993). Thus, under section 9-17-606, the only method for contesting the validity of a foreign support order is to request a hearing within twenty days after notice of registration. This requirement takes precedence over the Arkansas Rules of Civil Procedure because UIFSA creates a special registration proceeding for foreign support orders. Ark. R. Civ. P. 81(a) (1999).[2]

■ Turning to the issue of due process, Amendment 14, section 1, of the United States Constitution reads in part as follows:

> ...nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

In considering any constitutional challenge to a statute, we begin with the axiom that every act carries a strong presumption of constitutionality. *City of North Little Rock v. Pulaski County,* 332 Ark. 578, 968 S.W.2d 582 (1998). This presumption places the burden of proof on the party challenging the legislation to prove its unconstitutionality, and all doubts will be resolved in favor of the statute's constitutionality if it is possible to do so. *Foster v. Jefferson County Bd. of Election Comm'rs,* 328 Ark. 223, 944 S.W.2d 93 (1997). A statute will not be struck down unless it conflicts with the constitution clearly and unmistakably. *City of North Little Rock v. Pulaski County, supra.*

■ Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he is deprived of property by state action. *Owings v. Economic & Med. Servs.,* 302 Ark. 475, 790 S.W.2d 438 (1990). In that regard, the concept of due process requires nether an inflexible procedure universally applicable to every situation nor a technical concept with a fixed content unrelated to time, place, and circumstance. *See South Central Dist., Pentecostal Church v. Bruce-Rogers,* 269 Ark. 130, 599

---

[2] It should be noted that the Arkansas Rules of Civil Procedure do apply to proceedings under the Uniform Enforcement of Foreign Judgments Act, Ark. Code Ann. §§ 16-66-601 — 608 (Supp. 1999), which provides an optional procedure for the enforcement of foreign judgments. When this procedure is used to enforce a foreign judgment, the judgment is subject "to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of this state and may be enforced or satisfied in like manner." Ark. Code Ann. § 16-66-602.

S.W.2d 702 (1980). Instead, what process must be afforded is determined by context, dependent upon the nature of the matter or interest involved. *Id.*

 The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Matthews v. Eldridge,* 424 U.S. 319 (1976). The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer great loss." *See Goldberg v. Kelly,* 397 U.S. 254 (1970). It depends upon whether the interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Id.* Thus, determining what process is due involves the consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge, supra,* at pp. 334-335; *McCrory v. Johnson,* 296 Ark. 231, 755 S.W.2d 566 (1988).

 With regard to the first factor, individuals certainly have a private property interest in funds that are being diverted for child support. However, under the second *Matthews* factor, the risk of erroneous deprivation of those funds is diminished by the fact that registration proceedings are secondary proceedings to enforce an already adjudicated right to support. Thus, there is a presumption that sufficient process has already been afforded in the preceding suit, and that the order is valid. In this particular case, we are dealing with a facially valid order. Under the second part of this factor, the probable value, if any, of additional procedural safeguards, in addition to affording a hearing upon request, is negligible. These proceedings are abbreviated specifically because there has already been a prior adjudication. To require that pleadings also be allowed for the assertion of any defenses would only draw out the process, and would not add any substantive protections. Furthermore, any defenses that might be asserted in a pleading may be asserted at the hearing, provided that the hearing is requested in a timely manner. Finally, we must consider the public interest in

"striking the appropriate due process balance." *Matthews v. Eldridge, supra.* The public interest here is to make sure that the primary obligation to support a child does not fall to the State, and that foreign support orders are quickly and efficiently enforced. The twenty-day limitation is crucial to ensuring that a child not go without support any longer than necessary. By eliminating the requirement for responsive pleadings, the process is abbreviated so that the matter is resolved quickly and efficiently for the benefit of the child.

Our own case law establishes the propriety of this conclusion. In *Owings v. Economic & Med. Servs., supra,* we upheld a similar statute restricting the opportunity for a hearing to a specific time frame. In that case, the appellant brought a due process challenge to the notice and hearing procedures used by the Economic and Medical Services Department. According to the challenged procedures, a notice of termination of AFDC (Aid to Families with Dependant Children) benefits was mailed to the appellant at least ten days before the effective date of termination, and the appellant was required to respond to that notice before the termination date in order to secure a hearing on the matter. *Id.* The appellant failed to respond within the allotted amount of time. *Id.* We held that due process was afforded when the appellant was provided with both notice that her benefits would be terminated within ten days and the opportunity, if she responded in a timely fashion, to have her benefits continued pending a hearing. *Id.* In doing so, we pointedly observed that "[t]he lack of due process allegedly suffered by the appellant is not the result of a defect in the appellee's notice and hearing procedures; it is the result of the appellant's dilatory response. A pre-termination hearing was, so to speak, there for the asking." *Id.*

Likewise, a hearing and the opportunity to contest were "there for the asking" in this case. Mr. Thompson was provided with notice of the opportunity for a hearing to contest the registration and enforcement of the Washington order if he requested the hearing in a timely manner. We therefore hold that the notice and hearing procedures set out in Ark. Code Ann. § 9-17-605 through 9-17-607 do not contravene the due process guarantees of the United States Constitution. Accordingly, we conclude that the trial court erred, and we reverse its holding on the constitutionality of Ark. Code Ann. § 9-17-606.

■ Notwithstanding this conclusion, we will affirm the trial court where it reaches the right result, even though it may have announced the wrong reason. *Malone v. Malone*, 338 Ark. 20, 991 S.W.2d 546 (1999); *Dunn v. Westbrook*, 334 Ark. 83, 971 S.W.2d 252 (1998); *Marine Servs. Unlimited, Inc. v. Rake*, 323 Ark. 757, 918 S.W.2d 132 (1996). In that regard, we are not constrained by the trial court's rationale but may go to the record for additional reasons to affirm. *Heagerty v. State*, 335 Ark. 521, 983 S.W.2d 908 (1998); *Haynes v. State*, 314 Ark. 354, 862 S.W.2d 275 (1993).

■ The record in this case reflects that the documents served upon Mr. Thompson on June 10, 1998, gave him inconsistent information about the appropriate course of action to take in responding to the proceedings against him. Specifically, Mr. Thompson was served with a summons, which stated that he must file a responsive pleading within twenty days or suffer a default judgment. However, the notice of registration served on him at the same time quoted the language of Ark. Code Ann. § 9-17-605, which states that a hearing to contest the validity of the registered order must be requested within twenty days after personal service of the notice. This notice, however, did not include the language of Ark. Code Ann. § 9-17-606(a), which specifically places the burden of requesting a hearing on the nonregistering party. Simultaneously, Mr. Thompson was served with the motion for contempt, which stated that CSEU had already requested a hearing in the case. These documents all bear the same case number, yet one states that a hearing must be requested, another states that an answer must be filed, and finally another advises the recipient that a hearing has already been requested. In light of this conflicting information, it would not have been unreasonable for Mr. Thompson to believe that all of the actions required by the summons and the notice of registration had been taken; that is, a hearing had been requested, albeit by CSEU, and a responsive pleading had been timely filed. Based upon these particular circumstances, we hold that Mr. Thompson should not be barred from presenting any defense allowed under Ark. Code Ann. § 9-17-607. Accordingly, we affirm the result reached by the trial court, but we do so for different reasons.

Affirmed in part; reversed in part.