Peggy GULLEDGE; Kenneth Harrison *v.* Dick BARCLAY,
in His Official Capacity as Director of the Arkansas Department
of Finance and Administration; Tim Leathers, in His Official
Capacity as Revenue Commissioner and Deputy Director of
the Department of Finance and Administration; Jimmie Lou Fisher,
in Her Official Capacity as Arkansas State Treasurer;
Mike Huckabee, in His Official Capacity as Governor of
the State of Arkansas

02-88 84 S.W.3d 850

Supreme Court of Arkansas
Opinion delivered September 19, 2002

[Petition for rehearing denied October 24, 2002.]

*Oscar Stilley*, for appellants.

*Mark Pryor*, Att'y Gen., by: *Mark Hagemeier*, Ass't Att'y Gen., for appellees Fisher and Huckabee.

*Beth B. Carson*, Revenue Legal Counsel, for appellee Barclay.

ANNABELLE CLINTON IMBER, Justice. On December 15, 2000, the General Assembly convened in extraordinary session at the call of the Governor to address a single issue, the need for a one-half percent sales and use tax increase. The General Assembly acted expeditiously and passed Act 1 of the Second Extraordinary Session of 1999 (Act 1).[1] On December 17, 2000, the Governor signed Act 1, and the General Assembly adjourned. Appellants Peggy Gulledge and Kenneth Harrison,[2] acting on their own behalf and on the behalf of other taxpayers similarly situated, initiated this action challenging the constitutionality of Act 1, and now raise two issues on appeal: (1) whether the emergency clause of Act 1 is valid under Amendment 7 to the Arkansas Constitution; and (2) whether a bill introduced in a three-day extraordinary session of the General Assembly is unconstitutional under Article 5, § 34, of the Arkansas Constitution. The circuit court upheld the constitutionality of Act 1. We affirm.

The facts are not controverted. Act 1492 of 1999 provided for a one-half percent sales and use tax increase conditioned upon the future passage of a proposed amendment to the Arkansas Constitution that would grant a $300 property tax credit.[3] The validity of the proposed amendment's ballot title was challenged and found constitutional by this court in *Thiel v. Priest*, 342 Ark. 292, 28 S.W.3d 296 (2000). In *dicta*, this court opined that conditioning a tax increase upon the approval of a constitutional amend-

---

[1] Act 1 is also referenced as: 2000 Acts 1 (2nd Ex. Sess.)

[2] On motion of appellants' counsel, one of the original plaintiffs, Jim Wilson, Jr., was dismissed from the appeal.

[3] The proposed amendment, now Amendment 79 to the Arkansas Constitution, was approved by the voters at the November 2000 general election.

ment raised serious legal questions that could not be addressed because the issues were not before the court. *Id.* Purportedly in response to this court's opinion, the Governor called an extraordinary session of the General Assembly that convened on December 15, 2000 and adjourned on December 17, 2000 — a three-day session. During that session, the General Assembly passed Act 1, which repealed the statutes concerning property tax refunds and imposed a one-half percent sales and use tax increase. Act 1 included an emergency clause so that it would go into effect on January 1, 2001.

Appellants filed suit challenging the constitutionality of Act 1 and named several state officials as defendants.[4] All parties to the action moved for summary judgment, and the circuit court granted summary judgment in favor of appellees. The circuit court ruled that the emergency clause was valid under this court's holding in *Jumper v. McCollum*, 179 Ark. 837, 18 S.W.2d 359 (1929). The circuit court found that the emergency clause presented numerous facts. Even though fair-minded and reasonable persons might differ as to the sufficiency and truth of the facts, they were sufficient to meet the highly deferential standard under which the judiciary reviews legislative emergency clauses. *Id.* Second, the circuit court, relying upon this court's decision in *Spa Kennel Club v. Dunaway*, 241 Ark. 51, 406 S.W.2d 128 (1966), ruled that Act 1 was not in violation of Ark. Const., art. 5, § 34, because "this constitutional provision prohibiting bills from being filed during the last three days of a legislative session does not apply to any bills filed during an extraordinary session called by the Governor pursuant to his constitutional authority under Article 6, § 19." The instant appeal arises from the circuit court's grant of appellees' motion for summary judgment.

---

[4] Appellees Dick Barclay, in his official capacity as Director of the Arkansas Department of Finance and Administration, Tim Leathers, in his official capacity as Revenue Commissioner and Deputy Director of the Department of Finance and Administration, Jimmie Lou Fisher, in her official capacity as Arkansas State Treasurer, and Mike Huckabee, in his official capacity as Governor of the State of Arkansas.

■ ■ Summary judgment is appropriate where no genuine issues of material fact remain to be litigated. *City of Lowell v. City of Rogers*, 345 Ark. 33, 43 S.W.3d 742 (2001). In cases such as the instant case, in which the facts are not in controversy, a fact issue may still exist if the facts "may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law . . . ." *Id.* at 39, 43 S.W.3d at 745-46. Every act carries with it a strong presumption of constitutionality, and all doubts are resolved in favor of the act's constitutionality. *State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999). The burden of proof lies on the challenging party, and the statute will not be struck down unless it conflicts with the constitution clearly and unmistakably. *Id.*

## I. The Emergency Clause

■ Appellants first challenge the constitutionality of Act 1 by contending that the emergency clause fails to state facts constituting an emergency. The requirements for an emergency clause are stated in Amendment 7 to the Arkansas Constitution.

> If it shall be necessary for the preservation of the public peace, health and safety that a measure shall become effective without delay, such necessity shall be stated in one section, and if upon a yea and nay vote two-thirds of all the members elected to each house . . . shall vote upon separate roll call in favor of the measure going into immediate operation, such emergency measure shall become effective without delay. It shall be necessary, however, to state the fact which constitutes such emergency.

Ark. Const. amend. 7. The test for the validity of an emergency clause was established by this court in 1929: "If the fact which constitutes the emergency is recited, and if fair-minded and intelligent men might reasonably differ as to *the sufficiency and truth* of the fact assigned for placing the act in effect immediately upon its passage, the courts are concluded by the finding." *Jumper v. McCollum*, 179 Ark. 837, 840,18 S.W.2d 359, 361 (1929) (emphasis added). We give great deference to a legislative determination of whether an emergency exists. *ACW, Inc. v. Weiss*, 329 Ark.

302, 947 S.W.2d 770 (1997). However, the question of whether the General Assembly states facts constituting an emergency is subject to judicial review, and a statement of a mere administrative or factual truism is not sufficient. *Burroughs v. Ingram*, 319 Ark. 530, 893 S.W.2d 319 (1995). This court has noted that the test is similar to the substantial-evidence standard applied when reviewing a jury's verdict. *Cunningham v. Walker*, 198 Ark. 928, 132 S.W.2d 24 (1939); *Burroughs v. Ingram, supra.*

■ Recently, we considered the requirements for an emergency clause and reaffirmed the test established in *Jumper v. McCollum, supra. Priest v. Polk*, 322 Ark. 673, 912 S.W.2d 902 (1995). This court upheld an emergency clause that stated the immediate need for a constitutional convention to correct archaic and obsolete portions of the Arkansas Constitution. *Id.* The appellees in *Priest v. Polk* had successfully argued to the trial court that rewriting the constitution did not constitute an emergency. *Id.* Applying a test that an emergency was "some sudden or unexpected happening," the trial court agreed with the appellees. *Id.* We reversed, noting that the trial court had applied the wrong test. *Id.* Even though everyone may not agree that the need for a new constitution constituted a "real emergency," that was not the test; rather, "[t]he test is whether reasonable people might disagree as to whether an emergency is stated." *Id* at 683, 912 S.W.2d at 908.

The question in the instant case is whether the General Assembly has stated facts constituting an emergency upon which reasonable minds might disagree, or merely administrative and factual truisms. Section 11 of Act 1 included the following emergency clause:

> It is found and determined by the General Assembly of the State of Arkansas that Amendment 79 to the Arkansas Constitution requires the General Assembly to provide for a property tax credit of not less than $300 for each homestead; that providing such a property tax credit results in a significant reduction in revenues for funding county services and public schools; that without an alternative source of funding counties and public schools cannot operate effectively; that an increase in the state sales and use tax provides a source of funding for counties and public

schools; that this act will accomplish the purposes of Amendment 79 in providing a property tax credit and source of funding. It is necessary that this act become effective immediately in order to facilitate the administration of the property tax credit and to generate sufficient revenues to fully fund the credit. Therefore, an emergency is declared to exist and Sections 1, 2, 3, 4, 5, 6, 8 and 9 of this act being immediately necessary for the preservation of the public peace, health and safety shall become effective on the date of its approval by the Governor. If the bill is neither approved nor vetoed by the Governor, it shall become effective on the expiration of the period of time during which the Governor may veto the bill. If the bill is vetoed by the Governor and the veto is overridden, it shall become effective on the date the last house overrides the veto.

A summary reading of this emergency clause discloses the recitation of the following statements of fact:

- Amendment 79 provides a $300 property tax credit.

- The credit will result in a "significant reduction in revenues for funding county services and public schools."

- "[W]ithout an alternative source of funding counties and public schools cannot operate effectively."

- An increase in sales and use tax will provide additional funding to counties and public schools.

- The act provides for both the property tax credit and an alternate source of funding.

- Immediate effect is needed to facilitate the administration of property tax credits and to generate sufficient revenues to fully fund the credit.

In their initial argument on this point, appellants characterize these statements as "either academic statements of material fact, demonstrably false, plainly not sufficient to constitute an emergency in the mind of any reasonable person or some combination thereof." They then proceed to suggest three different reasons why the emergency clause fails to state facts constituting an emergency.

■ First, appellants contend that Act 1 and Act 1492 of 1999 were substantively identical laws and, therefore, the real purpose of Act 1 was an attempt to replace Act 1492 because this court in *Thiel v. Priest* had suggested in *dicta* that "there [were] serious questions surrounding Amendment [79] and its so-called enabling legislation [Act 1492] . . . ." *Thiel v. Priest*, 342 Ark. at 302, 28 S.W.3d at 301. Appellants also argue that because Act 1 and Act 1492 are identical, there could be no emergency requiring that Act 1 become immediately effective. Appellees, however, point out several differences in the provisions of the two acts. This is nothing more that an example of reasonable minds disagreeing as to the truth and sufficiency of the facts recited in the emergency clause. *ACW, Inc. v. Weiss, supra.*

■ Next, appellants contend that the General Assembly could have acted in October of 2000 and avoided the need for the emergency clause. Contrary to appellants' suggestion, the General Assembly could not have acted in October because the call of an extraordinary session is solely at the discretion of the Governor, not the General Assembly. Ark. Const. art. 6, § 19; *Priest v Polk, supra.* Moreover, the decision to call an extraordinary session is not subject to judicial review. *Spa Kennel Club, Inc. v. Dunaway, supra.*

■ Finally, appellants assert that Act 1 did not need to go into effect on January 1, 2001, to generate sufficient funds. Appellees respond by describing the timing and process involved in the collection and disbursement of sales and use tax revenues, and conclude that it was necessary for Act 1 to take effect on January 1, 2001, in order to assure adequate and timely funding for the counties and schools. Both sides make reasonable arguments based on the facts recited in the emergency clause. As previously stated, we give great deference to the General Assembly's determination that an emergency clause was necessary, and we must uphold its validity if reasonable persons might disagree as to the sufficiency and truth of the facts stated. *ACW, Inc. v. Weiss, supra.* Accordingly, we conclude that reasonable people might disagree about whether the facts enunciated in Act 1's emergency clause state an

emergency. We therefore uphold the validity of the emergency clause under Amendment 7 and affirm the circuit court's grant of summary judgment on this issue.

## II. Arkansas Constitution, Article 5, § 34.

For their last point on appeal, appellants argue that because the Second Extraordinary Session of 1999 lasted only three days, Act 1 was unconstitutionally introduced in violation of Article 5, § 34, of the Arkansas Constitution that provides: "No new bill shall be introduced into either house during the last three days of the session." Ark. Const., art. 5 § 34. Appellants further contend that Act 1 does not fall within any exception recognized by this court because the act did not constitute a real emergency.

 Article 6, section 19, of the Arkansas Constitution provides:

> The Governor may, by proclamation, on extraordinary occasions convene the General Assembly . . . and he shall specify in his proclamation the purpose for which they are convened, and no other business than that set forth therein shall be transacted until the same shall have been disposed of, after which they may, by a vote of two-thirds of all the members elected to both houses, entered upon their journals, remain in session not exceeding fifteen days.

Ark. Const., art. 6, § 19. We have explained that Article 6, § 19, "authorizes the governor to summon the general assembly into extraordinary session when in his judgment an emergency exists requiring same." *Spa Kennel Club, Inc. v. Dunaway*, 241 Ark. 51, 56, 406 S.W.2d 128, 131 (1966). While the laws passed in an extraordinary session are reviewable by the courts, the action of the Governor in calling the session is not. *Id.* This court has recognized that there are two distinct types of legislative sessions — regular sessions under Article 5, Legislative Department, and extraordinary sessions under Article 6, Executive Department. *Purcell v. Jones*, 242 Ark. 168, 412 S.W.2d 284 (1967). Regular sessions meet every two years for a time not to exceed sixty days unless extended by the General Assembly. Ark. Const. art. 5,

§§ 5, 17. Extraordinary sessions meet only at the call of the Governor, and after completion of the Governor's business, an extraordinary session may not be extended except by two-thirds vote of each house and then the extension may not exceed of fifteen days. Ark. Const. art. 6, § 19. The constitution does not establish a minimum amount of time that an extraordinary session must last.

In *Spa Kennel Club, Inc. v. Dunaway*, 241 Ark. 51, 406 S.W.2d 128 (1966), the appellants challenged the constitutionality of an act introduced within the last three days of an extraordinary session. *Id.* They argued, as do the appellants here, that the bill's introduction was in violation of Article 5, § 34's prohibition against introducing bills within the last three days of a legislative session. *Id.* This court noted that extraordinary sessions are not included in Article 5 of the Arkansas Constitution under the heading "Legislative Department," but are placed in Article 6 under the heading of "Executive Department," and are within the control of the Governor. *Id.* We declined in *Spa Kennel Club* to apply the time limitation referred to in Article 5, § 34, to bills introduced during extraordinary sessions of the General Assembly. *Id.*

In the instant case, appellants make two arguments in support of their contention that Article 5, § 34, makes any law enacted in a three-day (or less) extraordinary session unconstitutional. Both arguments, however, are based on the assumption that an exception to Article 5, § 34, must be established. Furthermore, appellants suggest that our opinion in *Spa Kennel Club* sets out "two bases for excluding an act from the operation of Article 5, § 34. The first is for an emergency. The second is for acts that are not legislative in nature."

As to the first alleged "exception," appellants read too much into our opinion in *Spa Kennel Club* in concluding that the General Assembly must prove that some "real emergency" exists in order to create an exception to Article 5, § 34. The phrase "such emergency legislation" used in *Spa Kennel Club* clearly refers to legislation enacted during an extraordinary session — a

session called by the Governor to deal with an "emergency" situation, i.e., one that cannot wait until the next regular session. Whether an emergency exists requiring an extraordinary session is a decision made by the Governor and not subject to judicial review. *Spa Kennel Club, Inc. v. Dunaway, supra.*

Likewise, appellants draw a mistaken conclusion when they extrapolate "an executive action" exception from our decision in *Spa Kennel Club.* This court's comments in that case concerning the executive branch related solely to the calling of an extraordinary session under Article 6, § 19, rather than Article 5, §§ 5, 17. *Spa Kennel Club, Inc. v. Dunaway, supra.* Even though the General Assembly meets in extraordinary session as a result of an executive action, *all* laws enacted by the General Assembly are, by definition, legislative actions, whether enacted during a regular session or an extraordinary session. Appellant simply misconstrues our holding in *Spa Kennel Club.*

Article 6, section 19, empowers the Governor to call an extraordinary session and mandates that the General Assembly may only stay in session after disposing of the Governor's business upon a two-thirds vote of the General Assembly, and then for no more than fifteen days. In *Spa Kennel Club,* we found no merit in the argument that a bill introduced within the last three days of an extraordinary session was unconstitutional under Article 5, § 34. *Spa Kennel Club, Inc. v. Dunaway, supra.* Under appellants' suggested interpretation, the General Assembly would have to stay in session, at the taxpayer's expense, for at least four days, even if the Governor's business could be finished in one day. Based on appellants' reasoning, we would be rewriting Article 6, § 19, of the Arkansas Constitution to require that an extraordinary session last at least four days. This we will not do.

Affirmed.