

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00331-CV

IN THE INTEREST D.T.,
A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In four issues, Appellant J.T., the alleged biological father of D.T., appeals the termination of his parental rights to D.T.

D.T. was born on August 2, 2012. A few months later, Child Protective Services (CPS) received a referral alleging Mother's and J.T.'s negligent supervision of D.T. and his older half-sister A.M.E. The Department of Family

---

[1]*See* Tex. R. App. P. 47.4.

and Protective Services (DFPS) filed its original petition with regard to both children on December 10, 2012, and removed the children after determining that there was "reason to believe" the allegations of domestic violence between Mother and J.T. and their drug use around the children.  The children were placed in a dual-licensed, adoption-motivated foster home, and Bridgette Agnew, a CPS caseworker, filed a service plan for J.T. on January 10, 2013.

On March 28, 2013, J.T. signed a waiver of service, acknowledged receipt of DFPS's petition, and entered his appearance in the case.[2]  In April 2013, at his only visit with D.T. during the case, J.T. received his CPS service plan, which contained all of Agnew's contact information.

Agnew testified that J.T. told her at his visit with D.T. that he had been living with Mother.  J.T. slept through most of the visit.  J.T. took a drug test at the visit—his only drug test during the pendency of the CPS case—and his test results were positive for methamphetamine and amphetamine.[3]

Agnew said that she had told J.T. at his April 2013 visit that the visits with D.T. were weekly and that he could attend with Mother because they were living together, but after J.T.'s only visit with D.T., Agnew was unable to maintain contact with him.  J.T. did not complete his service plan, but Mother told Agnew

[2]On his preprinted form request for counsel, filed in April 2013, J.T. did not circle whether he was a "parent/alleged parent."

[3]Agnew also testified that Mother had admitted drug use during the CPS case and that Mother had consistently tested positive for methamphetamine and amphetamine throughout the case.

that J.T. had known about the service plan since January 2013 and that he had known Mother was visiting D.T.[4] Agnew said that J.T. chose not to visit D.T.

At the June 12, 2013 permanency review hearing, which J.T. attended only through counsel, the trial court set the termination trial for September 3, 2013. On July 2, 2013, the State Registrar from the Texas Department of State Health Services filed a certificate of paternity registry search, stating that a diligent search of the paternity registry had been made and no notice of intent to claim paternity had been located concerning D.T. *See* Tex. Fam. Code Ann. § 161.002(e) (West 2008). Around August 2013, Mother told Agnew that J.T. had been incarcerated because he had pending criminal charges against him. Agnew said that J.T. had not contacted her since his incarceration and that he had not had any relatives or friends contact her on his behalf.

The termination trial was held on Tuesday, September 3, 2013. Mother filed an affidavit of relinquishment of her parental rights to the children on the Friday afternoon before the termination trial, and Agnew testified that Mother had indicated that she wanted the foster parents to adopt the children. A.M.E.'s biological father was never located. J.T. did not appear at trial.[5] Agnew and the

---

[4]Mother also told Agnew that during the pendency of the CPS case, the domestic violence in her relationship with J.T. continued.

[5]Mother told her counsel that J.T. was incarcerated. Mother's counsel reported this to J.T.'s counsel on the morning of the termination trial. J.T.'s counsel informed the trial court that J.T. had not notified him of a change of address, that he had not heard anything from J.T., and that he had only learned

3

children's ad litem attorney both recommended terminating Mother's and the alleged fathers' parental rights to the children.

The trial court terminated Mother's and both alleged fathers' parental rights to the children. With regard to J.T., the trial court's termination order found that he was the "alleged biological father" of D.T. and stated the following:

> The Court finds by clear and convincing evidence that, after having waived service of process or being served with citation in this suit, [J.T.] did not respond by filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under Chapter 160 of the Texas Family Code before the final hearing in this suit.

*See* Tex. Fam. Code Ann. § 161.002(b) (West 2008). The trial court also found by clear and convincing evidence that J.T. had endangered the child and constructively abandoned the child and that termination of the parent-child relationship, "if any exists or could exist, between the alleged father and [D.T.]," was in D.T.'s best interest. *See id.* § 161.001(1)(D), (E), (N), (2) (West Supp. 2013).

In his four issues, J.T. argues that the evidence is legally and factually insufficient to support the trial court's endangerment and constructive abandonment findings and factually insufficient to support the trial court's best interest finding.[6] However, J.T. does not challenge the termination of his parental

---

of J.T.'s incarceration on the morning of trial. He orally requested a continuance, which the trial court denied.

[6]Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001–.002(a), § 161.206(a) (West 2008);

4

rights under family code section 161.002, and he admits in his brief that he is "the *alleged biological* father of D.T." [Emphasis added.] *See R.H. v. Tex. Dep't of Family & Protective Servs.*, No. 08-12-00364-CV, 2013 WL 1281775, at *6 (Tex. App.—El Paso Mar. 28, 2013, no pet.) (observing that appellant judicially admitted in his appellate brief that he was "an alleged father" and that the record reflected that the evidence was legally and factually sufficient to support the statutory predicate for termination under section 161.002(b)(1)).

Further, as set out above, the record does not reflect that J.T. filed an admission of paternity or otherwise claimed paternity by writing to the trial court about being the child's father, appearing at trial to testify that he was the child's father, or performing any other act that would have prevented the summary termination of his parental rights under section 161.002. *Cf. In re K.W.*, No. 02-09-00041-CV, 2010 WL 144394, at *3 (Tex. App.—Fort Worth Jan. 14, 2010, no pet.) (mem. op.) (stating that there are no formalities that must be observed for an admission of paternity to be effective). There is no indication in the record that J.T. offered to take a paternity test or made any effort outside of a single visit with D.T.—during which J.T. slept and tested positive for drugs—to establish his interest in any relationship with D.T. before the termination of his parental rights to the child. *Cf. In re K.E.S.*, No. 02-11-00420-CV, 2012 WL 4121127, at *3

---

*In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008); *E.N.C.*, 384 S.W.3d at 802.

5

(Tex. App.—Fort Worth Sept. 20, 2012, pet. denied) (mem. op. on reh'g) (stating that father admitted paternity under section 161.002 when, although he did not file a counterclaim of paternity or for voluntary paternity under chapter 160, he responded to a CPS letter acknowledging that he believed the child to be his and cooperated when asked to take a paternity test, which was admitted without objection at trial, allowing the issue to be tried by consent).

Therefore, we affirm the termination of J.T.'s parental rights to D.T. under section 161.002 without reaching his endangerment, constructive abandonment, or best interest issues. *See In re K.G.*, 350 S.W.3d 338, 350–51 (Tex. App.—Fort Worth 2011, pet. denied) (reviewing chapter 161's statutory scheme); *cf. In re A.R.F.*, No. 02-13-00086-CV, 2013 WL 3874769, at *12–13, *18, *23 (Tex. App.—Fort Worth July 25, 2013, no pet.) (mem. op.) (affirming under section 161.001 after declining to affirm termination on unchallenged section 161.002 ground when appellant appeared at termination trial and unequivocally testified that he was A.R.F.'s biological father); *In re D.B.*, No. 02-07-00428-CV, 2008 WL 2553343, at *7, *12 (Tex. App.—Fort Worth June 26, 2008, no pet.) (mem. op.) (affirming under section 161.001 after declining to affirm termination on unchallenged section 161.002 ground when factual background showed that alleged father had filled in blanks on "Request for Counsel" form that stated he was "a parent of the child named above" and had testified that he was the child's father, that he had raised the child from birth, and that he remained the person responsible for the child); *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217

S.W.3d 85, 105–06 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (reversing termination as to one of the children's fathers under section 161.002 when he appeared at the termination trial, unequivocally asserted that he was the child's father, and requested that his parental rights not be terminated).

/s/ Bob McCoy

BOB MCCOY
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DELIVERED:  January 23, 2014

7